**RICHTER, Plaintiff-Appellee, v FIRST NATIONAL BANK OF CINCINNATI, Defendant-Appellant.**

Ohio Appeals, First District, Hamilton County.

No. 6869. Decided December 1, 1947.

George Luedeke, Cincinnati, for plaintiff-appellee.
Wm. J. Rielly, Cincinnati, for defendant-appellant.

114

## OPINION

By MATTHEWS, PJ.:

This is an appeal from a judgment for the plaintiff in an action to recover a commission on a contract between the plaintiff—a real estate broker—and the owner of the real estate that was sold. The issues of fact were submitted without a jury and the court found the issues of both fact and law in favor of the plaintiff.

The plaintiff had had some arrangement with Katharine Hamilton Banning, now deceased, in relation to acting as her agent in procuring a purchaser or purchasers for her real estate located in the western portion of the City of Cincinnati.

Under Mrs. Banning's will the defendant became trustee of this real estate and in that capacity sent the plaintiff a letter dated June 14th, 1939, of which the following is a copy:

"June 14, 1939.

Mr. H. E. Richter,
Mercantile Library Building,
Cincinnati, Ohio.
Dear Mr. Richter:

We have talked to Mrs. Loretta Conroy Martin, our Co-Executor in the administration of the Estate of Katharine Hamilton Banning, regarding the arrangement which you had with Mrs. Banning in connection with her west end industrial property.

"We understand that just prior to the time of Mrs. Banning's death, she had asked you to take charge of her property and place "For Sale" signs on same and that you were to see that no rubbish was dumped on the property and you were also to keep squatters off. Any inquiries on the property were to be submitted to you and any sales were to be made through you with the understanding that if there were no sales, you were to receive no compensation for your services. The signs were to be paid for by Mrs. Banning.

"We know that you have had a great deal of experience in handling the sort of property which Mrs. Banning has in the West end and therefore would be pleased to have you

place the necessary "For Sale" signs on the property and continue the arrangement which you had with Mrs. Banning, which we have outlined above.

Very truly yours,<br>
WELLS WOODLEY,<br>
Assistant Trust Officer."

The evidence discloses that this real estate consisting of several acres was unimproved and unenclosed, excepting that in the southwest corner the testatrix's husband, from whom she acquired the title, had conducted a lumber business, and, for that purpose, had constructed some sheds and had built some kind of a fence along three sides of the portion so used, leaving the fourth side open. Shortly after the quoted letter was delivered to the plaintiff a plat of the land was also delivered to him. This lumber site was embraced within the land shown on this plat. The plat showed that the land had been subdivided into lots and that there were intersecting dedicated streets, but showed no improvements of any kind on the property. Shortly before Mr. Banning's death, he had sold the lumber and other personal property to Mr. Hart and given him a lease on the lumber site. The record does not disclose the terms of that lease.

One of the principal contentions was that it was not the intention to include the lumber site within the contract. However, the evidence was conflicting on that subject, and the trial court found that it was included, and we cannot say that such finding is manifestly against the weight of the evidence.

There is evidence that the plaintiff had no occasion to remove any rubbish or do anything with reference to keeping squatters off the property. He did, however, place "For Sale" signs at various places on the property, but none directly on the lumber site. He testified that no sign was placed on the lumber site because it would not have been visible from that point.

The evidence shows that the plaintiff proceeded during the years to make sales of portions of this land until finally the only portion that was left was that embraced within the lumber site that Mr. Banning had leased to Mr. Hart. The record does not show the dates of these other sales.

The evidence also shows that the plaintiff endeavored to sell the lumber site and submitted at least two bids therefor. The defendant considered these bids and rejected them without informing the plaintiff that he was not authorized to find a purchaser therefor.

On December 30th, 1944, the defendant without any prior notice to the plaintiff terminating his authority sold the lumber site to Mr. Hart.

The judgment in this case is for the amount of the commission on that sum with interest.

The evidence also shows that this property is located in that portion of Cincinnati dedicated to industrial uses only, that the sale of such property is difficult and slow and that it would be reasonable to anticipate that it might take five or six years to find a purchaser.

In addition to the contention that the property in question was not embraced within the terms of the contract, which we have already disposed of, there remains these further contentions by the defendant:

(1) That as the plaintiff was not the procuring cause of this sale, he is not entitled to compensation. That would be a correct conclusion if we assumed: as the defendant has done, that there was nothing in the contract excluding the defendant from the right to deprive the plaintiff of a commission by exercising its right and power to sell. But we do not so construe the contract. The language of the contract is: "Any inquiries on the property were to be submitted to you, and any sales were to be made through you." That language can only mean that the plaintiff was given an authority to sell which excluded the defendant from depriving the plaintiff of a commission by negotiating a sale either directly or through any other intermediary.

(2) It is urged that as the offer or contract was without limit as to time it was revocable at the will of the defendant. But no notice of revocation of any sort was ever given. The sale was made at a time when the relationship was pending, unless it had ceased to exist by reason of lapse of time.

It is a well established principle that where no time of termination is expressed, its duration continues for a reasonable time, terminable upon giving of reasonable notice. In 12 Am. Jur., 860, it is said:

"Where the parties to a contract express no period for its duration and none can be implied from the nature of the contract or from the circumstances surrounding them, the only reasonable intention that can be imputed to the parties is that the contract may be terminated by either on giving reasonable notice of his intention to the other."

In the light of the evidence that property of this sort moved slowly on the market and frequently took much longer

than for a sale to be effected, and in further view of the fact that no notice of the termination of the plaintiff's authority had been given, we are of the opinion that the trial court was justified in concluding that the sale was made at a time when the plaintiff was entitled to a commission, no matter by whom the sale was made.

(3) Finally, it is urged that the plaintiff had a bare authority, not supported by any consideration.

We do not stop to analyze these promises to determine whether they were sufficiently definite as to create a contract of mutual promises. Whether consideration existed upon the making of the promises would be important if an action for breach of one or the other had been instituted before the parties had acted upon the promises. That is not the case here. The evidence in this case is that the plaintiff had started and almost completed performance before any question was raised as to the obligation to permit him to complete performance, and thereby earn his commission. Such part performance in reliance upon defendant's promise supplied the consideration if none had theretofore existed. Using other nomenclature, the part performance created a promissory estoppel.

In 17 C. J. S. 428, it is said:

"It has been said that every sufficient consideration, although not technically an estoppel, contains the substantial elements of an estoppel in pais, since one man by his promise induces another to change his situation, and to repudiate his promise would enable him to perpetrate a fraud * * *, but a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only be enforcement of the promise."

In Restatement of Law of Contracts, section 90, the rule is set forth that:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

Speaking of promissory estoppel, it is said in 12 Am. Jur., 605: "According to the latter doctrine, a promise is binding if

the promisee has suffered some detriment in reliance thereon, even though such detriment was not requested as consideration."

The plaintiff entered upon the campaign to sell this entire tract as a whole or in parcels, relying on the defendant's authorization so to do and its promise that it will deliver all inquiries to him and that all sales should be made by him. Whether the inquiry was prompted by the plaintiff's action. or was induced in any other way, if a sale resulted the defendant promised that the plaintiff should have a commission on the sale. The right to such commission on sales uninduced by him was a substantial part of the inducement causing plaintiff to undertake to sell this industrial property. To now limit his commission to such sales only as he initiated and carried to fulfilment would operate as an injustice to him.

For these reasons, the judgment is affirmed.

MATTHEWS, PJ, ROSS & HILDEBRANT, JJ, concur in syllabus, opinion & judgment.