MCGARRY, D. B. A. MCGARRY REALTY CO., APPELLANT, *v.* MCCRONE ET AL., APPELLEES.

(No. 22925—Decided March 10, 1954.)

*Mr. Paul Mancino,* for appellant.
*Mr. Robert E. Sweeney,* for appellee.

SKEEL, J. This appeal comes to this court on questions of law from a judgment for the defendants entered on the verdict of a jury. The plaintiff's action is one seeking a commission for the alleged sale of defendants' residence located at 1312 Elmwood Avenue in Mayfield Heights.

The plaintiff is a licensed real estate broker. The defendants, desiring to sell their home, contacted plaintiff by telephone about November 26, 1952, and listed their property for sale at a price of $14,800. The plaintiff's listing card shows the type and age of the house, the amount of taxes, that it was financed with a $9,800 first mortgage to the Capital Bank under G. I. and Federal Housing Authority loans, and that the house could be seen by appointment.

The plaintiff, through one of his sales people, showed the house to a Mr. and Mrs. Walick on November 27, 1952. Thereafter, on the next day, November 28, the plaintiff induced the prospective purchasers to make a written offer to buy the property for $14,000. This offer, which on its face showed a deposit of $500 to apply on the purchase price if accepted by defendants, was presented to defendants the same evening by plaintiff. No money, however, accompanied the offer, the $500 referred to in the agreement being in the form of a cognovit note made payable to "plaintiff on demand if offer is accepted."

Before this offer was made the plaintiff and his sales representative were completely informed of the financial inability of the Walicks to purchase the property without help, a loan, or a gift of money from a sister of Mrs. Walick.

The record discloses that plaintiff's sales representative testified:

"Q. All right, you may answer the question. A. They informed me that she had sufficient funds to buy it.

"Q. Where did they say they had it—in the bank? A. They told me they had it from some relative who was furnishing it,- whatever they needed. I tried to pin them down how much they had, and they wouldn't tell me. I never take anybody out without asking them."

The only property or funds of which they were possessed and had control of, so far as the evidence shows, was $1,000 in government bonds which matured in 1955. The plaintiff explained the cognovit note to defendants on the ground that the offer was made after banking hours when it was impossible to get the money. There is not a word of testimony in the record to justify or support this statement by the plaintiff.

The defendant testified as follows as to what took place when the plaintiff induced the defendants to accept the offer of Stephen and Dorothy Walick to purchase the property on the night of November 28, 1952:

"Q. What was said between you and Mr. McGarry and Mr. Mishaga at this time? A. Well, I figured that if I got an offer of $14,000 so quick maybe I should hold out for the $14,800 and Mr. McGarry said, 'this is a fast deal and here are people with the money and you don't know if you can get people with money right away this fast.' And I thought it over and I wanted to sell it and he told me Mr. and Mrs. Walick had $1,000 in bonds and they were going to get some money from some relative—he didn't know what relative—and he said, 'it looks like a good proposition.' " " * * *

"Q. What happened? A. I thought it over a little bit and hemmed and hawed, and then I called my wife

and said, 'come on, we'll sign.' So I signed it and said, 'go ahead and sign it too.' "

The day following the accepting of the contract by the defendants, the purchasers called the plaintiff and told him that they could not get the money. There were then some further negotiations in which the plaintiff met with the purchasers and the defendant on December 5 or 6. This meeting ended by the purchasers walking out of plaintiff's office because of the refusal of the plaintiff to permit a third person who had come with the Walicks to take part in the negotiations. This person was described by Mrs. Walick in her testimony as her brother-in-law.

In describing what took place on this occasion the defendant Frank McCrone, testified as follows:

"Q. Tell the court and jury what that conversation was about. A. Mr. McGarry said 'they're trying to back out. I bet he's got a house he's trying to sell them. This looks phony to me. We should sue them.'

"Q. Who should sue them? A. I should sue the Walicks. I said, 'Well,' I said, 'if they haven't got the money, there's nothing I can do about it. Why sue them for the thousand dollars in bonds they've got? All I want to do is sell my house and sell it in a hurry.' He said, 'Think it over. I've got a commission coming.' I said, 'For what?' He said, 'I got you a buyer.' I said, 'You didn't get me a bona fide buyer.' I said, 'If you can sell the house, go ahead and sell it and I'll pay you your commission when you get me a buyer.' I said, 'I don't want to sue those people, I just want to get my house sold.'

"Q. Is that still your attitude? A. Still my attitude.

"Q. What else transpired? A. Well, I left. He said, 'Think it over.' I said, 'I will.' I think it was two or three days later he called me and said, 'What

are you going to do about it?' I said, 'I'm not suing.' He said, 'You're not suing?' And I said, 'No.' He said, 'Well, I've got a commission coming and I'm going to collect it.' And subsequently I received a subpoena to appear here in court.''

As above indicated, the jury returned a verdict for defendants and from the judgment entered by the court on such verdict the plaintiff appealed, claiming the following errors:

''1. That the judgment of the court and the verdict of the jury is contrary to the law and the evidence.

''2. That the judgment herein is contrary to the weight of the evidence.

''3. That the court erred in refusing to enter a judgment for the plaintiff herein at the close of all the evidence.

''4. That the court erred in refusing to render judgment for the plaintiff upon his motion for judgment notwithstanding the verdict.

''5. That the court erred in submitting the cause to the jury when both the plaintiff and defendant made motions for judgment at the close of all the evidence.

''6. That the court erred in giving before argument the special instruction of the defendant.

''7. That the court erred in refusing to give the two special instructions requested by the plaintiff before argument.

''8. That the court erred in its charge to the jury.

''9. The court erred in failing to enter judgment for the plaintiff for the reason that no valid defense was pleaded by the defendants or proven by the defendants herein.''

It is first contended by plaintiff that the defendants, having admitted signing an agreement to sell their property to a prospective purchaser produced by the plaintiff, waive any claim by the sellers that such pur-

chaser was not ready, willing and able to buy so that the broker, who was the procuring cause of such purchase agreement, having previously been employed by the sellers to find a purchaser, is entitled to his commission even though it is subsequently made to appear that such purchaser was, in fact, without sufficient funds or the means of getting funds with which to buy the property. The plaintiff relies on the cases of *Carey, Admr., v. Conn,* 107 Ohio St., 113, 140 N. E., 643; *Scudder* v. *Wallace,* 79 Ohio App., 48, 71 N. E. (2d), 308; and *Lohr* v. *Ford,* 94 Ohio App., 17, 114 N. E. (2d), 300.

The *Carey case* cannot be as broadly construed as is contended for by the plaintiff. The syllabus of that case provides as follows:

"Where a real estate agent or broker makes a contract with the owner of property 'to find a buyer for his real estate at a commission of two per cent for his services' and pursuant thereto performs such services by producing the buyer, and the owner enters into a written contract of sale with such buyer, the real estate agent or broker, in the absence of fraud, is entitled to his commission for his services.

"If the contract between owner and purchaser, for any reason, fails of performance, and the owner thereafter brings a suit in specific performance upon such contract against such purchaser, the agent not being a party thereto, the judgment in the suit for specific performance is not *res adjudicata* against such agent."

The exceptions noted by the Supreme Court "in the absence of fraud" must be understood as including any overstepping or undue advantage taken of the seller by the broker, when viewed in the light of the high fiduciary responsibility owed by such broker to his employer or principal. This must be true and the obligations created by such fiduciary relationship are

violated where the broker knows or is in a better position than the seller to know that the customer produced by the broker, with whom he induces his principal to enter into a contract to sell, is at that time without the necessary financial backing or the ability to control funds or credit sufficient and necessary to consummate such transaction and such transaction thereafter fails for that reason alone.

A licensed real estate broker is duty bound to make full disclosure, insofar as he has knowledge of the facts, of the limited financial status of one whom he procures and presents as a purchaser, together with the circumstances to be drawn from such financial limitations. The fact that before he can act as a real estate broker he must be licensed by the state, which license is issued only upon the demonstration of satisfactory character and ability, imposes upon him the obligation to protect the best interests of his principal in inducing the principal to enter into a contract with a purchaser. A purchaser without the ability to finance the purchase is no purchaser at all. Where the only available source from which the greater part of the money is to come to make the purchase possible is, to the knowledge of the broker, admittedly in the ownership and possession of a third person, and its use in the interest of the purchaser is subject to the gratuitous consent of such third person who is in no way bound by or a party to the purchase agreement, such purchaser cannot be considered as one able to buy the principal's property. Such funds cannot be considered as assets of the purchaser. In this case, where the only present controllable asset of the purchaser consists of $1,000 in government bonds maturing in 1955, which fact was known to the broker before he induced the principal to enter into an agreement of purchase with such purchaser, so that an ac-

tion in specific performance would be useless and an action for breach of contract worthless, it would indeed be a harsh law that would make the seller liable to the real estate agent for the payment of a commission simply because he was able to induce the seller to enter into a contract with a purchaser who within the broker's knowledge, by every test, is unable to buy the property.

In 12 A. L. R. (2d), 1428, Section 14, cases will be found where, in an exchange of real estate, the broker induces the seller to enter into a contract of exchange, which cannot be consummated because of want of title on the part of the purchaser, it is held that the broker has not earned his commission.

In the case of *Butler* v. *Baker*, 17 R. I., 582, 23 A., 1019, while the question here being considered was not directly involved, the court said in effect that a broker engaged to procure a purchaser of realty cannot recover, though a contract of sale be signed, where the vendor relies wholly upon the broker's judgment as to the purchaser's financial ability and the purchaser turns out to be irresponsible.

Also, in the case of *Williams* v. *Sodim* (Mo. App.), 267 S. W., 81, it was held that where a broker knew that the purchaser he had procured was financially unable to carry out the contract, the broker could not recover his commission although a contract of sale had been entered into between the seller and the customer thus procured by the broker.

See, also, *Martinson* v. *Hensler,* 132 Minn., 437, 157 N. W., 714.

We find no Ohio case where this question has been clearly presented, but no principle of law has been more clearly affirmed by the courts of this state than that an agent should not be permitted to benefit by his own failure to perform his full duty in representing his principal.

In the case of *Scudder* v. *Wallace, supra,* the purchaser procured was well able to purchase the property, the court holding that a few days delay beyond the time fixed for closing the deal in no way justified the seller in refusing to consummate the purchase. The case holds also that the defendant therein had granted the broker an exclusive agency and that the resale of the store by defendant therein came within the period of such exclusive agency. Nowhere in this case is it even suggested that the agent produced a purchaser whom he knew was not in control of sufficient financial backing to consummate the transaction or to actually respond in damages for a breach of his promise.

In the case of *Lohr* v. *Ford, supra,* the purchaser was somewhat delayed in securing a loan necessary to complete the sale. The defendant notified the purchaser that unless the sale was concluded by August 10 he would declare the contract void. One week later, the purchaser notified the seller he was ready to close the transaction but defendant refused performance. There, as in the *Wallace case, supra,* no question was presented that the broker had knowledge of the fact that the purchaser presented was without financial ability to carry out his offer to purchase, and in spite of such knowledge advised and induced his principal to enter into a written sales contract.

The question of the ability of the Walicks to finance the purchase of defendants' house was put in issue by the pleadings. The petition alleges that the plaintiff upon being employed to find a purchaser for defendants' residence property, procured Stephen and Dorothy Walick, that defendants entered into a written contract with them to sell the premises for $14,000, and that a commission of $700 is now due the plaintiff. Defendants' answer admits that plaintiff induced defendants to enter into a written agreement

with the Walicks whereby the Walicks agreed to buy defendants' residence property for $14,000. Defendants alleged also that the Walicks were not ready, willing and able to make such purchase but "exhibited their open and apparent inability to purchase said home." This allegation of the financial inability of the Walicks to consummate such purchase, which was within the knowledge of plaintiff before he induced defendants to sign the contract, was denied by plaintiff's reply. This issue of fact was for the jury, and by their verdict they must have resolved such issue against plaintiff. Such a verdict was not against the manifest weight of the evidence or contrary to law.

The plaintiff alleged also in his petition that his agreement with the defendants was "to find a purchaser" for defendants' property, which claim is traversed by defendants' general denial. There is very little evidence on this question in the record but what there is would indicate that plaintiff's obligation under the listing agreement was to *sell* the defendants' property, so that his obligations under the agreement would not be fulfilled until the sale was completed.

At the conclusion of the taking of the evidence, the defendants moved for judgment, which motion was immediately overruled by the court. The plaintiff then moved for judgment, which motion was likewise overruled. The plaintiff claims that both parties having moved for judgment without reserving the right to have the case submitted to the jury, the court owed a legal duty to dismiss the jury and decide the issues of fact and questions of law under the rule of the case of *First National Bank* v. *Hayes & Sons,* 64 Ohio St., 100. 59 N. E., 893.

The record is clear, however, that defendants' motion had been overruled before plaintiff entered his motion for judgment so that the rule of the case of *First National Bank* v. *Hayes & Sons, supra,* does not apply.

The error complained of in the special charge given and refused before argument and the grounds of complaint against the general charge of the court, all have to do with whether the pleadings and evidence presented the question of whether the financial ability of the purchaser procured by plaintiff to purchase defendants' property was or was not waived by reason of the written contract entered into between such purchasers and the defendants. It is the claim of plaintiff that by reason of the law of the *Carey case, supra,* plaintiff is entitled to his commission regardless of the fact that the record shows that the purchaser procured was without any financial ability to carry out the terms of the purchase agreement without assistance from a third person, which they had no legal right to command and which fact was known to plaintiff before he induced defendants to sign the sales agreement. This question has been fully considered under the first claim of error.

We hold that plaintiff was not prejudiced under these complaints of error. We find that substantial justice has been done the parties and therefore the judgment of the Common Pleas Court is affirmed.

*Judgment affirmed.*

HURD, P. J., and KOVACHY, J., concur.