CLARKE ET AL., APPELLANTS, *v.*
HARTLEY ET AL., APPELLEES.

(No. 43648—Decided February 16, 1982.)

*Mr. Raymond J. Schmidlin* and *Mr.
L. James Juliano, Jr.,* for appellants.

*Ms. Mary Beth Ballard, Mr. Michael
S. Gruber* and *Mr. Roger A. Wadsworth,*
for appellees.

MARKUS, J. The sellers brought this action against the buyers for breach of their real estate purchase contract, and against the real estate brokers for breach of their duty to assist the sellers. The trial court denied the motion by plaintiffs-sellers for summary judgment against defendants-buyers, and granted motions for summary judgment in favor of the defendants-buyers and the defendants-brokers. Plaintiffs-sellers appeal from the resulting dismissal of their action.[1] Without reaching any conclusion about the ultimate resolution of this action, we agree with plaintiffs that defendants were not entitled to summary judgments.

The agreement for purchase and sale of plaintiffs' residential property, which was executed on July 4, 1979, contains the following printed language with the underlined blank spaces completed in handwriting:

"THE BUYER AGREES to purchase and pay to the Seller for said property, the sum of One hundred thirty three thousand Dollars ($133,000.00) as follows:

"$1,500.00 Cash _____ Check _x_ Note ____ earnest money deposited with REALTOR herewith.

"$_____ On signing hereof by Seller.

"$41,500.00 To be paid into escrow on or before the ____ day of _____ 19 __ .

---

[1] Plaintiffs have presented the following assignments of error:

"I. The trial court erred when it overruled appellants' motion for summary judgment against appellees Hartley.

"II. The trial court erred when it sustained appellees Hartleys' motion for summary judgment against appellants' claim set forth in their amended complaint.

"III. The trial court erred when it sustained appellee Boebinger Agency, Inc.'s motion for summary judgment against appellants' claims set forth in their amended complaint.

"IV. The trial court erred when it sustained appellee Town Square Realty's motion for summary judgment against appellants' claims set forth in their amended complaint."

"$90,000.00 Balance, if any, to be financed by V.A. loan. Offer to be fully accepted and signed by both parties by Midnight July 5 or offer is void. Closing on or about Sept. 10.

"1. MORTGAGE: It is understood that the Buyer will need a V.A. loan on the above described premises in the sum of not less than $90,000 to assist him in financing this transaction and he agrees to use his best efforts to obtain such a loan, at interest not exceeding 10% annually, with the final balance due in not less than _____ years, and in the event he is not successful in obtaining such a loan commitment as aforesaid within Aug. 20 days, this contract may, at Seller's written election, be rescinded. * * * Buyer agrees to make application or applications to local Banks, Savings & Loans, or Mortgage Brokers (whichever customarily processes or makes the above type of loan) within five days after this Agreement is signed by both parties. If required by the lender, Seller agrees to pay the necessary discount points, but not to exceed 3 points, each point being 1% of the total loan amount.
"* * *

"9. CONTINGENT SALE: This transaction is contingent upon sale of Buyer's property at none within 90 days from the date hereof * * *."

In the deposition of the husband-buyer, he testified that he applied for a V.A. insured loan, that the lending institution refused to make the loan unless the buyers first sold their own residence, that the buyers believed other lending institutions would impose the same condition, and that their attempts to sell their own home were unsuccessful. Consequently, buyers sent sellers a letter on August 31, 1979, asserting that the purchase agreement was null and void because approval of their V.A. loan application was subject to the sale of their own home, and that they were unable to sell their home despite diligent efforts. After receiving buyers' letter, sellers made new efforts to sell the property involved and eventually sold it to different purchasers for $13,000 less than the original contract price.

I

Sellers first claim they were entitled to summary judgment against the buyers, arguing that buyers wrongfully disclaimed responsibility for their contractual obligation. Buyers argue they were justified in avoiding their contract, contending that their ability to obtain a V.A. loan by August 20, 1979[2] was a condition precedent for their obligation to purchase plaintiffs' real property.

We hold that buyers had no right to rescind the contract on any specific date. However, buyers had no duty to perform the contract by completing the purchase after any valid condition precedent was negated. If their ability to obtain a V.A. insured loan was a condition precedent for their obligation to complete the purchase, buyers had a related duty to make their best efforts for a reasonable time to secure that loan. Therefore, if buyers were unable to obtain that loan within a reasonable time despite their best efforts to do so, and if the receipt of that loan was a condition precedent to their purchase, then their duty terminated and there was no breach. On the other hand, if the specified financing was not a condition precedent to their purchase obligation, or if they disclaimed their purchase obligation before it had been demonstrated that the loan would be unavailable within a

---

[2] A purported agreement to extend the deadline to September 6, 1979 did not modify the purchase agreement because it was not signed by the buyers until after September 6, 1979, and the buyers then modified the extension agreement without sellers' knowledge or consent.

reasonable time despite their best efforts, then their letter disclaiming any further contractual duty was an anticipatory breach for which damages are recoverable. See *Smith* v. *Sloss Marblehead Lime Co.* (1898), 57 Ohio St. 518; *South Main Akron, Inc.* v. *Lynn Realty, Inc.* (1951), 62 Ohio Law Abs. 103. Each of these premises involves genuine material factual issues which could not be resolved by a summary judgment.

Under the clear and unambiguous terms of the purchase agreement, only plaintiffs had the right to rescind if the V.A. loan was not obtained by August 20, 1979. Buyers were not given the same right to rescind. In *Montgomery* v. *Bd. of Edn.* (1921), 102 Ohio St. 189, 193, the court stated:

"The law will not insert by construction for the benefit of one of the parties an exception or condition which the parties either by design or neglect have omitted from their own contract."

Where clear and convincing evidence demonstrates that the parties' true intent was not embodied in the contract because of some mutual mistake, a court may reform the contract to reflect the parties' intent. *Frate* v. *Rimenik* (1926), 115 Ohio St. 11. In the present case, buyers' pleading does not assert any claim for reformation, and the evidence submitted to support the summary judgment motions fails to show sellers intended that buyers could rescind if buyers were unable to obtain the specified financing by August 20, 1979. Therefore, the plain terms of the contract are controlling, and the buyers were not automatically entitled to abandon the agreement on that date because they did not obtain the desired loan.

However, the ability to obtain such financing within a reasonable time using buyers' best efforts might be a condition precedent for buyers' duty to complete this purchase. Ordinarily, interpretation of a contract is a matter of law for the court. *Alexander* v. *Buckeye Pipe Line Co.* (1978), 53 Ohio St. 2d 241 [7 O.O.3d 403]; *N.Y., C. & St. Louis Rd. Co.* v. *Heffner Constr. Co.* (1967), 9 Ohio App. 2d 174 [38 O.O.2d 187]. However, when contractual provisions are ambiguous, the trier of fact should resolve such ambiguities with appropriate instructions from the court. *Amstutz* v. *Prudential Ins. Co.* (1940), 136 Ohio St. 404 [16 O.O. 572]; *Filtro Import Co.* v. *Janszen* (1930), 36 Ohio App. 63; *Woodward* v. *Glaser* (1950), 57 Ohio Law Abs. 180. Parol evidence reciting oral or written statements by the parties to each other prior to or contemporaneous with the execution of the agreement may be admitted to resolve such ambiguities. *Butler Produce & Canning Co.* v. *Edgerton State Bank* (1953), 159 Ohio St. 267 [50 O.O. 283]; *Yoder* v. *Electric Co.* (1974), 39 Ohio App. 2d 113 [68 O.O.2d 288]; *Lyon* v. *Jackson* (1955), 72 Ohio Law Abs. 5.

Indeed, this court has previously approved use of parol evidence to resolve the question whether ambiguous language in a real property purchase agreement established specified financing as a condition precedent for the duty to purchase.[3] *Blaha* v. *Schwartz* (Feb. 22, 1980), Cuyahoga App. No. 40197, unreported; see, also, *Williams* v. *Johnson* (D.C. App. 1967), 229 A. 2d 163. Further, the parties may testify as to their actual intent to resolve the meaning of ambiguous contractual provisions. *Yoder* v. *Electric Co., supra; G & S Metal Products Co.* v. *Rosenblum* (June 21, 1979), Cuyahoga App. No. 39116, unreported.

We find that the provisions of this contract are ambiguous as to whether buyers had a duty to complete the purchase only if they could obtain the de-

---

[3] We are aware that the present contract purports to be a fully integrated agreement containing the entire understanding of the parties. However, we held in *Blaha, supra,* that ambiguities in an integrated contract justify the use of parol evidence for their resolution.

scribed loan by the exercise of their best efforts over a reasonable time, or whether the described loan was simply a recited possible method by which buyers could obtain funds to meet an unconditional promise to purchase. Paragraph 1 uses phrases that permit either interpretation. Paragraph 9 increases the ambiguity by listing only one possible condition for the contract, the prior sale of buyers' own property, and then effectively denying that even this condition applies to the agreement made by these parties. The contract read as a whole is ambiguous on this subject because it is reasonably capable of two equally available constructions. Cf. *Carpenter* v. *Warner* (1929), 7 Ohio Law Abs. 636.

Assuming that the contract does make buyers' performance conditioned on their ability to obtain the prescribed loan, it still explicitly requires them to make their best efforts to obtain that loan. Since it does not designate the time they must persevere in seeking that loan, the law implies that this duty must extend for an interval that is reasonable under all the circumstances. *Stewart & Johnson* v. *Herron* (1907), 77 Ohio St. 130; *Roudebush Realty Co.* v. *Toby* (1955), 99 Ohio App. 524 [59 O.O. 421]. However, the law does not require a purposeless act, so buyers would not have a duty to persevere in seeking the loan if it became clear that their efforts would continue to be unsuccessful. Cf. *Standard Oil Co.* v. *Warrensville Hts.* (1976), 48 Ohio App. 2d 1 [2 O.O.3d 4].

The duty to seek the defined loan did not require buyers to sell their own home in order to obtain the loan, since the contract did not so provide. The contract does not require them to satisfy extraordinary conditions imposed by a lender. In *Dodson* v. *Nink* (1979), 72 Ill. App. 3d 59, 390 N.E. 2d 546, the plaintiff's agreement to purchase a house was conditioned on her ability to sell her own house. Plaintiff found a prospective buyer, but the sale of plaintiff's house was contingent on the buyer's ability to obtain a V.A. loan. The V.A. loan was offered the prospective buyer provided plaintiff made certain repairs to her property. Plaintiff refused to make the repairs, and neither sale was completed. The court granted plaintiff's claim for the return of her earnest money, holding that the plaintiff's duty to use reasonable efforts to find a buyer did not require her to make repairs in order to sell her home.[4]

The facts in *Kimbrough* v. *Belk & Co.* (1979), 149 Ga. App. 756, 256 S.E. 2d 119, are very similar to those in the present case. In *Kimbrough,* the contract to purchase real estate was contingent on the purchaser's ability to assume a loan on the property. The court stated at pages 757-758:

"While this language might require the purchaser to diligently pursue obtaining the loan assumption, including complying with necessary conditions pertinent thereto, it would not require the purchaser to diligently seek to honor any extraneous or extraordinary conditions imposed by the lender as a prerequisite to obtaining the loan. Here, the lender did not request of the purchaser just the ordinary incidents of the loan assumption, as: a credit check, a transfer fee, an agreement to execute the necessary payments. Instead, an additional requirement was imposed, one not contemplated in the original agreement between the purchasers and the sellers, to wit, the purchasers must sell their lot.

"Although ostensibly the loan as-

---

[4] Courts have also upheld the seller's right to refuse to perform certain conditions imposed by the lender. See *Crane* v. *Mulliken* (1980), 86 Ill. App. 3d 1076, 408 N.E. 2d 778 (seller of shopping center not required to submit financial records to lender for examination); *Tighe* v. *Wilson* (1980), 68 Ohio App. 2d 113 [22 O.O.3d 133] (seller not required to amend the purchase agreement to facilitate the buyer's ability to obtain FHA insured financing).

sumption was approved by the lender, the inclusion of the extra condition, not part of the original contract, amounted to a denial since the purchasers could not assume the loan unless such prerequisite was met. *While 'diligence' might encompass compliance with the ordinary incidents of the loan assumption, it did not mandate that the purchasers sell their lot*; they could in fact refuse to do so and would lose no rights. When the purchasers failed to sell their lot, for whatever reason, their status was that they were unable to assume the loan within the meaning of the contractual language." (Emphasis added.)

In the present case, the buyers' duty to use best efforts to obtain a V.A. loan did not require them to sell their house, even if they had been able to do so on reasonable terms. The absence of such a requirement in this purchase agreement is emphasized by the language in Paragraph 9, which provides that the agreement is not contingent on the prior sale of the buyers' home.

For all the above reasons, the trial court properly denied sellers' motion for summary judgment against the buyers.

## II

Sellers next contend that the trial court should not have granted summary judgment in favor of the buyers. We agree. As explained earlier, genuine issues of material fact remain for trial, including determinations whether the purchase agreement was conditioned on buyers' ability to obtain the described financing, whether buyers made their best efforts for a reasonable time to secure that financing, whether buyers' efforts to seek the loan commitment were shown to be futile, and whether buyers' letter denunciation of their purchase agreement constituted an anticipatory breach in all the circumstances.

The husband-buyer testified that he applied for the V.A. loan at only one lending institution. Although he testified to his belief that treatment of his application would not vary from one institution to another, the trier of fact must determine whether application at a single lending institution satisfies the buyers' duty to use their best efforts. See *Honkomp* v. *Dixon* (1981), 97 Ill. App. 3d 476, 422 N.E. 2d 949.

In *Smith* v. *Currie* (1977), 40 N.C. App. 739, 253 S.E. 2d 645, the court held at page 742:

"The nature of the issue involved in the present case, whether the defendant acted in good faith and made reasonable efforts to obtain a loan, is such that summary judgment is ordinarily not a proper vehicle for its resolution. * * * Whether a purchaser made reasonable efforts to obtain financing has been held to be a question that should be submitted to the trier of fact * * *."

Accord *Allview Acres, Inc.* v. *Howard Investment Corp.* (1962), 229 Md. 238, 182 A. 2d 793; *Manning* v. *Bleifus* (W. Va. 1980), 272 S.E. 2d 821; see, also, *Brack* v. *Brownlee* (1980), 246 Ga. 818, 273 S.E. 2d 390. Therefore, the buyers were not entitled to summary judgment on sellers' claim that buyers breached the purchase agreement.[5]

## III

Sellers' final two assignments of error both concern the claimed liability of the realty brokers, so we will consider them together. Plaintiffs-sellers argue

---

[5] Although sellers' amended complaint alleged that buyers made negligent and fraudulent misrepresentations, plaintiffs failed to argue on appeal that it was error to enter summary judgment for the buyers on these claims. "Errors not specifically pointed out in the record and separately argued by brief may be disregarded." App. R. 12(A). Accordingly, we do not consider or reverse the summary judgment entered in favor of the buyers on the issue of alleged negligent and fraudulent misrepresentations by the buyers to the sellers.

that defendant Town Square Realty (hereinafter "Town Square") and defendant Boebinger Realtors (hereinafter "Boebinger") were not entitled to summary judgment dismissing sellers' actions against them. We agree.

The listing agent was employed by Town Square. An employee of Boebinger cooperated with Town Square in showing the property to buyers, and both agencies participated as sellers' brokers in sales negotiations for this property. Sellers contend that both brokerage agencies breached their fiduciary duty to sellers by failing to investigate the buyers' ability to obtain a V.A. loan. Sellers also argue that the brokers misrepresented a material fact by failing to advise them that approval of the V.A. loan might be conditioned on the sale of buyers' own home.

To justify a summary judgment, Town Square and Boebinger must demonstrate that: (1) no genuine issue as to any material fact remains to be litigated; (2) as moving parties, they are entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the party against whom the motion is made, reasonable minds could only find against that party. Civ. R. 56(C); *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 327 [4 O.O.3d 466].

"[A] broker is a fiduciary who owes his principal the duties of disclosure, good faith and loyalty as to all matters within the scope of his employment." *Case* v. *Business Centers, Inc.* (1976), 48 Ohio App. 2d 267, 270 [2 O.O.3d 229]. This court held in *McGarry* v. *McCrone* (1954), 97 Ohio App. 543, 549 [56 O.O. 479], that:

"A licensed real estate broker is duty bound to make full disclosure, insofar as he has knowledge of the facts, of the limited financial status of one whom he procures and presents as a purchaser, together with the circumstances to be drawn from such financial limitations. The fact that before he can act as a real estate broker he must be licensed by the state, which license is issued only upon the demonstration of satisfactory character and ability, imposes upon him the obligation to protect the best interests of his principal in inducing the principal to enter into a contract with a purchaser."

See, also, to the same effect, *Mason* v. *Bulleri* (Ariz. App. 1976), 25 Ariz. App. 357, 543 P. 2d 478; *Hardy* v. *Davis* (1960), 223 Md. 229, 164 A. 2d 281; *R. A. Poff & Co.* v. *Ottaway* (1951), 191 Va. 779, 62 S.E. 2d 865. In *Farrell* v. *Score* (1966), 67 Wash. 2d 957, 411 P. 2d 146, the court stated at pages 961-962:

"It is the broker's duty to give his principal such information as he may have of the prospective purchaser's financial situation. If the broker has no knowledge thereof, it is his duty to disclose this fact to the principal, so that the latter may investigate it. 12 Am. Jur. 2d Brokers § 89 (1964). The existence of this duty owed the principal by his broker entitles the principal to rely on such representations as the broker may make to him regarding the financial ability of the intending purchaser."

At his deposition, the husband-seller testified that Boebinger made the following representations: "[T]hat they [the buyers] were capable financially of handling it, there wouldn't be any problems with the loan, and no contingencies on the sale." He further testified that before he signed the purchase agreement, Town Square's listing agent said, "[G]o ahead, I think it is a good deal."

Whether these statements by the brokers constitute negligent or fraudulent misrepresentations are genuine issues of material fact. We express no opinion whether sellers can satisfy their burden of proof at trial that either or both of the brokers breached a duty owed to sellers. We can only say at this stage of the proceedings that neither of the brokers has disproved such a breach of duty as a matter of law. Therefore, Town Square and Boebinger were not entitled to summary judgment against sellers.

For the foregoing reasons, the trial

court should not have granted the motions for summary judgment against plaintiffs-sellers on their claims against the buyers, Town Square or Boebinger. The judgment is affirmed in part and reversed in part and the cause is remanded for further proceedings in accordance with this opinion.

*Judgment accordingly.*

PATTON, P.J., concurs.

DAY, J., concurs in part and dissents in part.

DAY, J., concurring in part and dissenting in part. I concur in each of the dispositions of the assignments of error with the reservation indicated in this opinion.

I do not adopt the total rationalizations upon which the dispositions are based because legal conclusions beyond those necessary to expose the existence of material and genuine issues of fact are premature and, in that sense, presently irrelevant to questions put in issue by motions for summary judgment. Moreover, I would not utilize App. R. 12(A) to fragment the reversal which responds to Assignment of Error No. II.