OPINION
This matter presents a timely appeal and cross-appeal from a decision rendered by the Columbiana County Common Pleas Court, sustaining the motion for summary judgement filed by defendant-appellee/cross-appellant, Charles W. Bowers, Jr. (hereinafter "Bowers"); dismissing the claims brought by plaintiff-appellant/cross appellee, Shearl E. Salmons (hereinafter "Salmons"); dismissing the counterclaim brought by Bowers; and, granting judgement in favor of Salmons in the amount of $9,000.00.
On April 10, 1996, Salmons filed a complaint against Bowers, wherein he alleged that in the beginning months of 1995, the parties jointly agreed to purchase certain real property for the amount of $55,000.00. Said real property was located in Madison Township, Columbiana County, Ohio and consisted of approximately three acres of land, upon which a garage was situated. Salmons stated that both he and Bowers agreed to provide a $9,000.00 down payment on the subject real property and that financing was to be obtained by Bowers on the balance of the purchase price. Salmons indicated that such agreement was memorialized by Bowers in a signed and dated statement, which declared:
 "Upon Receipt of $9000.00 from Shearl E. Salmons, he will own 1/2 of 12695 Leslie Rd. garage on which he and Charles W. Bowers will split 1/2 of all bills incurred on said garage. After mortage (sic) is obtained by Charles W. Bowers a lien will be filed by Shearl E. Salmons for 1/2 the purchase price of $55,000.00."
Salmons explained that on April 28, 1995, he paid the sum of $9,000.00 to Bowers as evidenced by a second receipt which was signed and dated by Bowers. Salmons thereafter paid Bowers the sum of $350.00 per month, which he alleged were payments for one-half of the mortgage, for approximately six months. Salmons also paid Bowers the sum of $330.00 in November of 1995, which Salmons claimed was for one-half of the insurance on the premises. Salmons received a third receipt for the above claimed payments which also stated that the payments were received for payment on 1.51 acres and garage.
Salmons allegedly believed he was in joint possession of the premises with Bowers, however, repeated requests for documentation to this effect went unanswered. Therefore, Salmons indicated that he stopped making the monthly payments to Bowers. Salmons stated that on or about March 22, 1996, he received a notice to leave the premises from legal counsel for Bowers and subsequently discovered that the subject real property was held solely in Bowers' name. Salmons additionally alleged that he purchased several salvage vehicles from Bowers, upon which Bowers refused to transfer title to Salmons.
Salmons amended his complaint on May 16, 1996 and further complained that Bowers had changed the locks to the garage situated on the subject real property, thereby denying Salmons access to same. Salmons claimed that he had various items of personal property located in the garage including, two high performance engines, automobile parts, and tools. Salmons stated that when he was finally able to enter the garage, numerous items of personal property were missing. Salmons also stated that Bowers moved two of the vehicles which belonged to Salmons and removed parts from said vehicles.
The claims made by Salmons in his complaint against Bowers were of a broad nature and included: breach of contract; unjust enrichment; slander of title; fraud; conversion; and, replevin. Salmons sought a constructive trust upon the subject real property; a partition or sale of the subject real property; an accounting of funds paid to Bowers; punitive damages; specific performance regarding the titles to the vehicles in question or their value; and, return of personal property allegedly converted by Bowers or its value. Salmons also included the mortgage holder, Citizens Banking Company, and Vicky Lynn Bowers as defendants in this action.
Salmons further filed a motion for a temporary restraining order and preliminary injunction on May 16, 1996, in which he requested that Bowers be enjoined from prohibiting him access to the subject real property and garage and that Bowers be enjoined from disposing of his vehicles and personal property.
On June 12, 1996, Bowers filed an answer and counterclaim. Bowers argued that Salmons loaned him the sum of $9,000.00 with which to purchase the real property in question and that therefore, Salmons never had any interest in said real property. Bowers stated that Salmons had agreed to rent the garage from him and that the monthly sums received from Salmons, were, in fact, rental payments. Bowers explained that when Salmons refused to continue making the rental payments as required, he was served with a notice to leave the premises and was given an adequate amount of time to remove his vehicles and personal property.
Bowers admitted that Salmons purchased some salvage vehicles from him but denied any further allegations with regards to these vehicles. Bowers also admitted that following a break-in at the garage on the subject real property, the locks were changed. Finally, Bowers admitted that Salmons stored various items of personal property in his garage but denied any further allegations with regard to such items. Bowers thereafter set forth twenty defenses to the complaint filed by Salmons.
In his counterclaim, Bowers set forth claims for breach of contract, unjust enrichment and slander of title. Bowers alleged that Salmons breached their agreement by failing to continue to pay the required, monthly rental fee, plus a portion of the insurance and other expenses for the garage. Bowers also stated that despite repeated requests to remove his personalty, Salmons continued to leave various items, including seventeen vehicles, on the real property in question without paying storage fees. Bowers also filed a memorandum contra to Salmons' motion for injunctive relief on June 12, 1996.
A hearing was held before the trial court on Salmons' motion for temporary restraining order and preliminary injunction on June 14, 1996. During said hearing, the trial court received testimony from both parties and documentary evidence. In its judgment entry filed July 9, 1996, the trial court noted that Bowers admitted to owing Salmons the sum of $9,000.00. The trial court further noted that Salmons held equitable title to a 1988 Oldsmobile, a 1995 Pontiac Grand Am and a 1988 Buick and thereby ordered Bowers to effect the transfer of the legal title to said vehicles to Salmons or his designee, as was legally appropriate.
The trial court further stated:
 "The Court finds that there remains disagreement regarding the nature of said $9,000.00 obligation and that there remains disputes between the parties regarding buyers fees allegedly due Bowers and regarding equitable and/or legal title to real property and to personal property on Bowers' premises."
The trial court held that pending resolution of the disputed issues, Bowers was restrained from disposing of any property in which Salmons had an equitable or legal interest. The trial court additionally held that the parties were to take a mutual inventory of all personal property at issue. The trial court ordered that Salmons was to remove any personal property over which there was no dispute as to Salmons' ownership from the subject premises within thirty days following the submission of the inventory to the court.
Following the resolution of various pre-trial motions and taking of the parties' depositions on September 19, 1996, the trial court held a pre-trial hearing, at which time it granted the parties leave to file motions for summary judgment.
Bowers filed his motion for summary judgment on February 24, 1997, along with supporting documentation. Salmon filed a memorandum in opposition to Bowers' motion on April 9, 1997, along with supporting documentation, but did not file a cross-motion for summary judgment. Following a hearing on Bowers's motion and upon due consideration of the issues at bar, the trial court filed its opinion and judgment entry on May 16, 1997. The trial court granted summary judgment in favor of Bowers, dismissing the claims presented by Salmons and dismissing the counterclaim filed by Bowers. The trial court further granted judgment for Salmons in the amount of $9,000.00, the amount due on the alleged loan to Bowers.
The trial court stated at page 3 of its opinion and judgment entry:
 "It is clear that [Salmons] holds no legal or equitable interest in [Bowers'] real property; the claims of an ownership interest do not comport with the statute of frauds since there is no written agreement; [Salmons'] `evidence' to support these issues is, as a matter of law, insufficient for the Court to determine intent or support the claimed real estate interest, nor to support an ownership interest in any business since the Court nor any finder of fact would, as a matter of law, be able to construe or determine the nature of any interest of the parties. At best, the parties had an agreement to enter into an agreement to form a business relationship."
 "* * *, [Salmons] has not presented any evidence to support the valuation or existence of personal property allegedly disposed of by [Bowers] that has not otherwise previously been dealt with by the Court."
The trial court further found that both parties came to this action with unclean hands as a result of the ambiguity of their agreements, their lack of records, and the failure to make an accounting of their transactions. Salmons filed his notice of appeal from the trial court's decision on June 13, 1997 and Bowers filed his notice of cross-appeal on June 23, 1997.
Salmons' sole assignment of error on appeal alleges:
 "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE DEFENDANT."
In determining whether a trial court has properly granted summary judgment, a court of appeals must conduct a de novo review of the record. Grafton v. Ohio Edison Company (1996),77 Ohio St.3d 102.
Civ.R. 56 (C) recites, in pertinent part:
 "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
As set forth by the Ohio Supreme Court in Welco Industries,Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344, 346:
 "Under Civ.R. 56, summary judgment is proper when `(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgement as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.' * * * Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party."
The Ohio Supreme Court in Dresher v. Burt (1996),75 Ohio St.3d 280, held that a moving party cannot discharge its initial burden under Civ.R. 56 simply by making conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56 (C) which affirmatively demonstrates that the nonmoving party has no evidence to support its claims.
The Ohio Supreme Court in Dresher, supra further held that once the moving party has met its initial burden, the nonmoving party must then produce any evidence for which such party bears the burden of production at trial.
Salmons argues that the trial court utilized the testimony of both parties, taken during the hearing on his motion for temporary restraining order and preliminary injunction, along with the depositions of both parties which were made a part of the record, to improperly weigh credibility in granting summary judgment in favor of Bowers. Salmons states that credibility is an issue to be decided by a jury, which was requested in the case at bar.
Salmons maintains that he presented both testimony and documentary evidence going to every element of his claims against Bowers, including the claim of fraud in the real estate transaction. Salmons further contends that particularly in reference to his claims concerning the engines and a 1986 Honda, the only personal property which remained in dispute, he had informed counsel for Bowers as to the identity of experts which would testify at trial regarding value. Salmons also stated that as to the 1989 Honda, he not only testified to having paid the sum of $475.00, but also, the book value at the time of conversion could have been utilized.
Salmons cites to Paul v. Uniroyal Plastics Co. (1988),62 Ohio App.3d 277, for the proposition that a trial court's function in rendering a decision on a motion for summary judgment is to consider the evidence, in light of each party's evidentiary burden, to determine whether there is sufficient evidence to support the nonmoving party's position. In essence, Salmons states that pursuant to Civ.R. 56 (C), the purpose of summary judgment is not to try the issues of fact, but rather to determine whether triable issues of fact exist. Salmons avers that the resolution of a motion for summary judgment does not include trying witness credibility and if the surrounding circumstances place the credibility of a witness in question, then such matter should be resolved at trial where the demeanor of the witness can be observed. Killifea v. Sears, Roebuck Co.
(1985), 27 Ohio App.3d 163.
Salmons further argues that the trial court improperly applied the doctrine of unclean hands to him in the within matter. Salmons acknowledged that he was not a licensed dealer of automobiles but rather, obtained the assistance of Bowers, who was a licensed dealer, in purchasing salvage vehicles which he could repair and which could then be sold. Salmons points out the trial court indicated that his failure to keep business records, among other things, was sufficient reason to apply the unclean hands doctrine to him. However, Salmons contends that this is an issue going to his credibility. Additionally, Salmons maintains that no evidence was presented to indicate that his activity regarding the subject vehicles constituted an illegal act.
Salmons continues that the trial court improperly ignored his claim for attorney's fees. Salmons contends that given the documentary evidence presented to indicate that Bowers wilfully and deliberately attempted to defraud him with regards to the real property purchase, his claim for attorney fees should have been given consideration and the claim of fraud should have gone to the jury.
Finally, Salmons complains that the trial court improperly found that there was no evidence to support his claim that Bowers had converted the 1986 Honda and the engines in question. Salmons avers that all he needed to prove at trial is that he owned certain property, that such property wrongfully entered the possession of another (Bowers) and that he was damaged as a result. (See Saydell v. Geppetto's Pizza Ribs Franchise Sys.,Inc. (1994), 100 Ohio App.3d 111). Salmons contends that his testimony, if believed, established these elements and therefore, the trial court's finding of insufficient evidence in this regard was error.
In response, Bowers agrees that pursuant to Civ.R. 56 (C), a trial court is only empowered to determine whether there are issues to be tried and the evidence must be considered most strongly in favor of the party against whom the motion for summary judgment was made. However, Bowers contends that his motion for summary judgment decides this case on its merits as there were no genuine issues of material fact remaining to be decided.
First, Bowers argues that Salmons' claim to co-ownership of the real property in question must fail for lack of a written agreement between himself and the sellers (Larry and Sally Bowers) in accordance with the Statute of Frauds. Bowers points out that the supporting documentation to his motion for summary judgment established that the only parties to the subject real property transaction were himself and the sellers. Bowers further points out that Salmons testified that the only arrangement which he had with the sellers of the subject real property was a verbal "deal" which was never consummated; that he never signed any promissory note for any loan to purchase the subject real property; that he never signed a mortgage for the subject real property; and, that he never had any contact with a lending institution regarding the subject real property. (Salmons Depo. 38-39, 51)
Bowers further asserts that the writings dated April 28, 1995 to which Salmons referred in this case were not substitutes for a written agreement between transacting parties as required under the Statute of Frauds. Bowers maintains that such writings do not set forth a contractual interest in the subject real property but rather, indicate a possible future interest in onehalf of the garage building located on said property. Alternatively, Bowers suggests that said writing support the proposition that the parties intended to secure the loan from Salmons by a lien or mortgage upon the subject real property.
Bowers states that the document dated April 28, 1995 which referred to the $9,000.00 in question was, at best, a receipt for a loan from Salmons to him. Bowers specifically acknowledged that he owed Salmons the sum of $9,000.00 and such obligation is not disputed. Bowers does state, however, that he was entitled to certain set-offs against the sum of $9,000.00 as detailed in his counterclaim.
With regards to the 1986 Honda vehicle in dispute, Bowers argues that Salmons presented no evidence to substantiate his claim concerning same. Bowers points to Salmons' testimony wherein he acknowledged that Bowers himself paid for the vehicle at auction. (Salmons Depo. 83-85). Salmons claimed that he reimbursed Bowers for the cost of the vehicle in question by check dated February 17, 1995, a copy of which was offered as evidence. (Salmons Depo. 83-85). However, Bowers' offers that a review of his records indicates that the vehicle at issue was purchased on September 21, 1995 and therefore, Salmons could not have reimbursed him for same in February of 1995.
Concerning the two engines in dispute, Bowers points out that during Salmons' deposition he was asked what facts he had to support his allegation that said engines had been converted by Bowers. In response to this inquiry, Salmons simply stated that they were located in the garage one day and the next time he had occasion to go to the garage, they were gone. Salmons testified that these were the only facts which he had to support his allegation of conversion. (Salmons Depo. 87-88). Therefore, Bowers avers that Salmons offered no evidence to support his claim for conversion.
The Statute of Frauds provides that certain agreements, by statute, must be evidenced by a writing signed by the parties sought to be bound. R.C. 1335.05 states in relevant part:
 "No action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default, or miscarriage of another person; * * *; nor to charge a person upon an agreement made upon consideration of marriage, or upon a contract or sale of lands, * * *, or interest in or concerning them, or upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized." (Emphasis added).
A memorandum in writing, to be within the Statute of Frauds, needs to be signed by the party to be charged, and must contain the essential elements of the contract expressed with such clearness and certainty that they may be understood from the writing. Kling, Admr., etc. v. Bordner (1901) 65 Ohio St. 86, 98. Further, in Lateef v. Bitonte (Feb. 22, 1995), Mahoning App. No. 92 C.A. 6, unreported, this court cited to North Coast Cookies,Inc. v. Sweet Temptations, Inc. (1984), 16 Ohio App.3d 342, 348, wherein that court set forth the purpose of the Statute of Frauds as follows:
 "This statute serves to ensure that transactions involving a transfer of realty interests are commemorated with sufficient solemnity. A signed writing provides greater assurance that the parties and the public can reliably know when such a transaction occurs. It supports the public policy favoring clarity in determining real estate interests and discourages indefinite or fraudulent claims about such interests.
 "This statute does not require that the parties' full agreement be reduced to writing, even though it involves realty transfers. It does not concern the substance or form of such agreements. Rather, it mandates some writing signed by the party sought to be held or that party's authorized agent, so that the agreement's existence has sufficient certainty. * * *." (Emphasis added)
It appears that the writings in question concerning the subject real property could establish the parties' intentions. When the three receipts, which were signed by the party to be charged (Bowers), are taken as a whole, the names of the parties can be ascertained (Salmons Bowers), the location and acreage of the property (12695 Leslie Rd., 1.51 acres), the amount of the down payment ($9,000.00), and the total amount needed for the purchase (1/2 of $55,000.00). While the memorandum between Bowers and Salmons failed to spell out exactly when and how the payments were to be made, the memorandum is not required to be as replete as a formal statement, so long as it embodies the essence of the agreement and adequately identifies the subject matter. Schaferv. Faylor (1944), 74 Ohio App. 533. Further, a memorandum is construed strictly against the party drawing it. Adams v. Samuelset al. (1947), 82 Ohio App. 102, 104. In this case, the memorandum was drawn by Bowers.
Normally, common words appearing in the instrument will be given their plain and ordinary meaning unless manifest absurdity results or some other meaning is clearly evidenced from the face or overall contents of the contract. Alexander v. Buckeye PipeLine Co. (1978) 53 Ohio St.2d 241. In the case sub judice, the receipt dated April 28, 1995 and identified before the trial court as Plaintiff's Exhibit 2, states that appellant is to receive a 1/2 interest in a mortgage. It is clearly absurd that an individual would pay $9,000.00 for the privilege of obtaining an interest in a debt. Where contractual provisions are ambiguous and subject to differing interpretations, parol evidence may be admitted for purposes of explaining the understanding of the parties at the time the agreement was made. Yoder v. Electric Co.
(1974), 39 Ohio App.2d 113, 116-117. The contract in the instant case is ambiguous because it is reasonably capable of at least two available constructions. Both parties in the action gave conflicting testimony as to the meaning of the contract. Bowers claims that the receipts indicate that Salmons was entitled to some future interest in the garage. However, this fails to explain why the receipt dated February 4, 1996 and identified before the trial court as Plaintiff's Exhibit 3, makes specific reference to 1.51 acres of land. In the alternative, Bowers claims that the receipts were given in order to secure a lien against the property. However, this fails to explain why the receipt dated April 28, 1995 and identified before the trial court as Plaintiff's Exhibit 1, stated that Salmons will own 1/2 of the 12695 Leslie Rd. garage. Salmons claims that the receipts represented a sale of a 1/2 interest in the disputed property from Bowers to Salmons. Testimony consistent with any of the three meanings can be found throughout the deposition transcripts. This allows the parties to testify as to their actual intent to resolve the meaning of the ambiguous contractual provisions. Clarke v. Hartley (1982), 7 Ohio App.3d 147, 149. Clearly, Salmons' offered testimony is sufficient to rebut Bowers' testimony of what he believed the receipts to mean. As a result of the conflicting evidentiary facts, there remained genuine factual issues as to whether a contract was created between the parties for the sale of the real property in question. These material issues of fact were ones to be resolved by the trier-of-fact, in this case, a jury, which would be in the best position to determine the credibility of the witnesses presented. Therefore, the trial court erroneously disposed of such issues on summary judgment.
Next, with regards to Salmons' claims concerning the engines and the 1989 Honda, it must be noted that the court in Wagner v.Armbruster (1996), 108 Ohio App.3d 719, 726, stated, citing toPaul, supra:
 "Although the nonmoving party does not have to try the case in response to a motion for summary judgment, the party must produce more than a mere scintilla of evidence in support of his claims."
By virtue of Salmons own deposition testimony, he did not provide sufficient evidence to establish conversion and additionally, did not provide sufficient evidence as to the value of the personal property in question. Although Salmons testified that he paid $475.00 to purchase the 1989 Honda, Bowers provided documentary evidence to establish that he, himself, purchased this vehicle on September 21, l995 and that the check which he received from Salmons for the amount alleged was in February of 1995. Further, Salmons did not come forward with the evidence which he had the burden of producing at trial concerning his engines. Salmons admitted that although he provided Bowers with the names of expert witnesses which he would call at trial to establish value on all his personal property in question, no depositions were taken of such experts to provide to the trial court at the time of the ruling on Bowers' motion for summary judgment.
On the issue of conversion, Salmons simply stated during his deposition testimony that one day the engines were in the garage where he had placed them, and the next day they were gone. Salmons had no further facts or evidence to offer with regards to his allegations and therefore, it clearly cannot be said that he established the elements necessary to prove conversion.
As to Salmons' claim that the trial court improperly applied the doctrine of unclean hands to him, such issue is moot. We have determined parol evidence may be utilized to deduce the intent the parties to the agreement concerning the real property at issue and that the trier-of-fact, a jury, would be in the best position to determine the credibility of the witnesses presented. Further, the trial court reached its decision concerning the issues of Salmons's personal property on other grounds, with which we agree.
Given the foregoing, the trial court erred in granting summary judgment in favor of Bowers on all issues relating to the real property in question.
Salmons' sole assignment of error is found to be with merit, in part.
For his cross-appeal, Bowers alleges one assignment of error, which states:
 "THE TRIAL COURT ERRED IN GRANTING JUDGMENT TO PLAINTIFF AGAINST DEFENDANT/CROSS-APPELLANT IN THE AMOUNT OF $9,000.00 WHEN PLAINTIFF DID NOT MOVE FOR SUMMARY JUDGMENT."
Bowers cites to the case of Bowen v. Kil-Kare, Inc. (1992),63 Ohio St.3d 84, 94, wherein the Ohio Supreme Court held that summary judgment generally should not be granted on an issue when a party does not specifically move for summary judgment on such issue. Bowers concludes that since Salmons never moved for summary judgment concerning the $9,000.00 at issue, he should not have been granted judgment in that amount by the trial court.
Salmons responds that in accordance with State, ex rel.Cuyahoga Cty. Hosp. v. Bur. of Workers' Comp. (1986), 27 Ohio St.3d 25
and Wilson v. Tucker (Jan. 14, 1997), Ross County App. No. 96CA2209, unreported, an entry of judgment in favor of the nonmoving party does not prejudice the moving party's due process rights where all relevant evidence is before the trial court, no genuine issue as to any material fact exists and the non-moving party is entitled to judgment as a matter of law.
Bowers' sole assignment of error on cross-appeal is well-taken in light of our decision on Salmons' sole assignment of error on appeal. If Bowers' cross-assignment of error was found to be without merit, it would result in a windfall for Salmons. The courts are not in the business of providing windfalls to successful litigants and overcompensating is to be strictly avoided. Arko-Plastics v. Drake Industries (1996), 115 Ohio App.3d 221,228 (citing Henderson v. Spring Run Allotment (1994),99 Ohio App.3d 633, 645)
Therefore, as the trial court erred in granting summary judgment in favor of Bowers on the issues regarding the real property in question, it likewise erred in granting judgment in favor of Salmons concerning the $9,000.00 at issue. Genuine issues of material fact remain involving all aspects of the real property in this matter which should be determined by the trier-of-fact.
The judgment of the trial court is affirmed in part and reversed in part and this cause is remanded for further proceedings according to law and consistent with this opinion.
Donofrio, J., concurs.
Vukovich, J., concurs
APPROVED:
 __________________________________ EDWARD A. COX, PRESIDING JUDGE