JAYNES, Plaintiff-Appellee, v VETEL, Defendant-Appellant.

Ohio Appeals, Second District, Franklin County.

No. 4080. Decided February 27, 1948.

Kenneth B. Johnston, C. M. Addison, Columbus, for plaintiff-appellee.

Carl H. Valentine, Columbus, for defendant-appellant.

## OPINION

By MILLER, J.

This is a law appeal from the Court of Common Pleas of Franklin County. The action was one for damages arising out of alleged misrepresentations claimed to have been made which induced the plaintiff to purchase from the defendant a certain retail dairy products and delicatessen store located at 959 Parsons Avenue, Columbus, Ohio. After alleging the sale and consideration the petition contains the following allegations:

"Plaintiff further says that the defendant represented to the plaintiff at the time said sale was made that he had a three year lease for the premises in which the store was located, at a rental of One Hundred Dollars per month, and that said lease ran for three years from May, 1945, and said defendant agreed in writing as part of the sale agreement, to assign said lease to the plaintiff at any time she desired.

"Plaintiff further says that she relied upon said representation in purchasing the said store and was induced by said representation to purchase it.

"Plaintiff further says that after purchasing said store, she took possession of it and began to operate it and was able to make a profit of about One Hundred Dollars per week in the operation thereof.

"Plaintiff says that thereafter she demanded of defendant that he assign the lease to her but that the defendant refused to do so.

"Plaintiff further says that thereafter she learned that the defendant had no lease for the premises but only a month to month oral tenancy and that on December 1, 1945, the lessor refused to accept the rent for the premises and ordered the plaintiff to vacate.

"Plaintiff further says that she was forced to vacate the premises on or about December 23, 1945, by reason of the fact that the defendant had no lease as he had represented and failed to assign a lease to the plaintiff as he had agreed to do."

To this petition a general denial was filed. A jury trial was had which resulted in a verdict for the plaintiff.

The record discloses that on the 29th day of August, 1945, the defendant executed a bill of sale in favor of the plaintiff by the terms of which he transferred to her the stock, equipment and fixtures in the storeroom located at 959 Parsons Avenue, Columbus, Ohio, and that the plaintiff actually took possession on September 1, 1945; that the defendant had operated said store continuously since the year 1938; that he originally took possession of the storeroom in 1938 under a written lease for the period of five years at the monthly rental of $100.00. This lease contained a clause granting the defendant the option to renew for another five year period upon the same terms and conditions. This lease expired in May, 1943, and the renewal option was not exercised it seems through some neglect on the part of the defendant. The plaintiff offered substantial evidence which tended to show that the defendant represented to her that he had a lease on these premises running from May, 1945.

In addition to signing the bill of sale the defendant entered into the following agreement which is offered in evidence as Plaintiff's Exhibit No. 2:

"This agreement made and concluded this 29th day of August, 1945, by and between Sam Vetel and Mae Jaynes, both of Columbus, Ohio, witnesseth:

"That whereas said Sam Vetel has this day sold to said Mae Jaynes the business located at 959 Parsons Avenue, Columbus, Ohio, and whereas said Sam Vetel is the leasee under a lease on said premises;

"Now, therefore, I, Sam Vetel, in consideration of said sale, do hereby agree with said Mae Jaynes and her assigns, that said Mae Jaynes may have an assignment of said lease from said Sam Vetel, at any time desired; that pending the assignment of said lease, said Mae Jaynes may occupy and rent said property from Sam Vetel or his assigns, at the same price as provided in said lease."

The record is undisputed that the plaintiff paid the rent for several months direct to the defendant and that in the month of December she demanded an assignment of the lease in accordance with the agreement. The defendant did not comply with this demand and on cross-examination he admitted that he had no lease. It was denied, however, throughout the trial that he had made any representation to the plaintiff about a lease. Certainly the signing of the lease agreement refutes this contention of the defendant.

In the offering of proof as to the damages she had suffered because of the breach of contract to assign and because of the misrepresentations made, the plaintiff testified that during the time she conducted the business she was able to make a profit of approximately one hundred dollars per week. To support this claim the books and records she kept were offered and admitted in evidence.

The first assignment of error is directed to the testimony of the plaintiff showing what her profits had been since she took over the business. The appellant is contending that this is not a statement of evidentiary fact but a statement of an operative fact, a mere conclusion of the witness. Further, that the questions raised by the pleadings relate to loss of future profits only and that loss of profits is not the measure of damages.

The record discloses that the plaintiff had been in sole charge of this store as employee of the defendant for several months prior to the time she purchased the store, and also had worked in a similar store of the defendant's at another location for a considerable period of time. She was therefore experienced in management of this type of store and had been active in its daily operation. She was therefore in a position to know whether or not it had been making money. We believe, therefore, she was a competent witness to testify on this subject. Her statement was not only an operative fact but it was an evidential fact. It should be noted that the plaintiff is not suing for loss of future profits, but is suing for damages for misrepresentation and breach of contract. Evidence as to the profits the business had been making in the past is certainly admissible as some evidence to show the amount of damage she has suffered because of the breach. The plaintiff testified that her lease was to be for three years from May, 1945, but because of the misrepresentation and breach she was forced to vacate the premises on December 23, 1945, It is true that evidence as to future profits is not admissible when entirely uncertain and only speculative. The profits concerning which the plaintiff testified were not of such a nature, but they concerned a business which had been

established for approximately seven years. On the subject of profits as an element of damages, **13 O. Jur., Sec. 72, page 151**, provides:

"**In General.**—Early English and American decisions excluded profits altogether as an element of recoverable damages; but this rule seems generally to have been abandoned with regard to both contract and tort actions. In other words, recovery of profits is not denied merely because of the fact that they are profits. It by no means follows, however, that damages may be allowed for loss of profits in any and all cases. In Ohio, recovery for loss of profits claimed by reason of the defendant's wrongful act has been denied time and again, but principally because of the uncertainty or speculative character of the probable profits in the particular case, or because the profits claimed could not be reasonably said to have been in the contemplation of the parties. None of these decisions purport to deny absolutely the right to recover for loss of future profits. And many other cases have permitted an allowance of damages based upon the profits lost by reason of the defendant's wrong, both in actions on contracts and in actions ex delicto, though, perhaps, in the former class of cases, the courts are less inclined to permit an award of profits. In cases where profits may be recovered, the burden is on the party seeking to recover to show that they would have been profits. The usual grounds for excluding profits in estimating the amount of damages are: First, that expected profits are dependent upon uncertain and changing contingencies which constitute no definite or trustworthy measure of the actual damages; second, because loss of profits is ordinarily remote, and not as a matter of course the direct and immediate result of the nonfulfilment of the contract; third, because most frequently an engagement to pay such loss of profits in case of default in the performance is not a part of the contract, and cannot be implied from its terms. But it is equally well settled that profits which would have been realized, had the contract been performed, and which have been prevented by its breach, are included in the damages to be recovered in every case where such profits are not open to the objection of uncertainty or remoteness, or where, from the express or implied terms of the contract itself, or from the special circumstances under which it was made, it may be reasonably presumed that such profits were within the intent and mutual understanding of both parties at the time the contract was entered into."

The profits arising from the store in this case do not come under any of the grounds for excluding profits in estimating the amount of damages. The loss of the alleged profits

here was the direct result of the plaintiff being forced to vacate the room and close the store, and this in turn, the direct result of the breach by the defendant of his agreement to sign a lease. The alleged profits in this case are not open to the objection of uncertainty or remoteness as in the case of the future profits of a peach orchard not yet grown, because this was an established business conducted at this location at an alleged profit over a period of years.

It is said further in **Volume 13 O. Jur. on page 155:**

"Although no recovery can be had for profits which are uncertain, contingent, conjectural, or speculative, it must be borne in mind that profits must in their very nature be to some extent uncertain and conjectural, so that one cannot on that account, or account of difficulties in the way of proof, be deprived of all remedy. (8 Ruling Case Law, page 503.) The general rule that absolute certainty is not required applies in this, as in other respects, and there is no doubt that recovery for profits may be allowed upon breach of a contract, if profits were in contemplation of the parties at the time the contract is made, and there is reasonable certainty that profits were in fact lost as a result of the breach. Loss of net profits, due to the shutting down of a factory by reason of the breach of a contract to furnish coal, must be considered as proximate damages occasioned by the breach, and not as falling under the category of speculative profits. So, profits lost by reason of the failure to deliver a telegram are recoverable, where they are not open to the objection of uncertainty and remoteness."

We think that the Court in its charge to the jury properly and fully stated the law when he said:

"If, under these instructions you find for the plaintiff, the measure of damages recoverable would be such damages as would fairly compensate the plaintiff for the wrong suffered, if any; that is, the damages sustained directly and proximately by reason of misrepresentations made, if misrepresentations were made; and by reason of the failure, if there was a failure, to assign a lease in accordance with the terms of the contract, if there was a contract. The basis of the claim for damages in this petition are alleged in the fourth paragraph of the petition as follows: 'Plaintiff further says that after purchasing said store she took possession of it and began to operate it and was able to make a profit of about $100.00 a week in the operation thereof'. Relative to the subject matter of profits made in the past as a basis for damages in the future the court gives you the following instructions. Profits which would, with

reasonable certainty, have been realized had the misrepresentation, if any, not been made and had the contract been performed, and which have been prevented by the breach of the contract, may be included or used as a measure of damages to be recovered in each case where such profits are not open to the objection of uncertainty or remoteness or speculation or guess. In other words, although no recovery can be had for profits which are uncertain, contingent, conjectural, or speculative, nevertheless, recovery may be had where the evidence, and a preponderance thereof, proves with reasonable certainty that profits were in fact lost as a result of the breach of the contract, if there was a breach of the contract in connection with the representations made as an inducement to enter into the contract. And to repeat, profits may not be recovered if they are uncertain, contingent, conjectural or speculative, but may be recovered if the evidence and a preponderance thereof shows with reasonable certainty, not only that profits would have accrued to the plaintiff, but shows also with reasonable certainty the amount thereof. Whether the evidence in this case shows the one or the other is for your determination from all the evidence."

We are, therefore, of the opinion that the trial court committed no error in admitting evidence concerning the profits made by the business in the past.

We find no prejudicial error in the admission or rejection of evidence offered by either of the parties hereto.

The appellant is contending further that the plaintiff was guilty of misconduct and irregularity by which the defendant was prevented from having a fair trial, but we find no evidence to support this charge.

Since there was substantial evidence offered on behalf of the plaintiff to support all of the material allegations of her petition, the Court committed no error in overruling the motion for a directed verdict at the close of the plaintiff's case and at the conclusion of all the evidence.

The Court did not err in refusing to give the special instructions requested before argument, neither did it err in its general charge to the jury. The charge was complete and correctly stated the law to be followed by the jury in its deliberations.

We find no prejudicial error in any of the other assignments and the judgment is affirmed.

WISEMAN, PJ, and HORNBECK, J, concur.

## APPLICATION FOR REHEARING

No. 4080.   Decided March 16, 1948.

By MILLER, J.

This is an application for a rehearing submitted on behalf of the defendant-appellant. Counsel properly calls our attention to the fact that the books and records kept by the plaintiff in her business were offered by the defendant and not by the plaintiff, but this does not change the ultimate fact that these records were offered in evidence for consideration by the jury. The weight to which they were entitled is solely within its province. We found, and are still of the same opinion, that there was substantial evidence in the record to support all of the material allegations of the petition. Such being the case it cannot be said that the verdict is against the manifest weight of the evidence. A reviewing court should not reverse a judgment as against the weight of the evidence if it is supported by any competent, credible evidence which goes to all the essential elements of the case. A reversal cannot be made simply because the evidence is conflicting, or even though it might have returned a different verdict from that rendered by the jury; it has no right to say the verdict was not warranted. The defendant is contending the evidence shows that after deducting the value of the plaintiff's services in the operation of the business, no profit is shown but on the contrary it shows an actual loss. This we find to be correct, but it must be noted that these figures were based only on approximately three and one-half months operation. In **Bishop v East Ohio Gas Company, 41 Abs 353,** which is relied upon by the defendant, it was held that the value of a business can be determined by capitalizing at a fair rate of return the average annual profits or net income for a reasonable number of years, and ten years is such a reasonable number. But here we have only the results of three and one-half months operation. This cannot be said to be a reasonable length of time for the determination of the value of the business. It cannot be conclusive, but is entitled to such weight as the jury may give it. The net earnings of the business were available to the defendant, for he had operated for more than seven years prior to the sale to this plaintiff. The result of these years of operation are not in the record, but it should have been in order to arrive at its true value. It would appear that this evidence was not favorable to the defendant or it would have been produced.

The application is denied.

WISEMAN, PJ, and HORNBECK, J, concur.