**MIAMI PACKAGING, INC., Plaintiff,**

v.

**PROCESSING SYSTEMS, INC. and Hollymatic Corporation, Defendants.**

**No. C–1–89–753.**

United States District Court,
S.D. Ohio, W.D.

Sept. 5, 1991.

James M. Hill, Coolidge, Wall, Womsley & Lombard, Dayton, Ohio, for plaintiff.

Thomas Spencer Shore, Jr., Felix John Gora, Rendigs, Fry, Kiely & Dennis, Cincinnati, Ohio, for defendants.

## ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SPIEGEL, District Judge.

### FACTS

This matter is before the Court on the defendant's motion for summary judgment (doc. 16), the plaintiff's memorandum in opposition (doc. 35), and the defendant's reply (doc. 38).

The case before the Court involves a machine which never matched the expectations that the parties had for it. The machine was supposed to function as a highly automated "patty paper converter." A patty paper converter cuts rolls of wax paper into small sheets suitable for hamburger patties.

In the case at bar, Webtec, an independent contractor, hoped to design a faster and more efficient patty paper converter than any other on the market. Both the plaintiff and the defendant desired to profit from Webtec's patty paper converter. The plaintiff, Miami Packaging, Inc. ("Miami"), is a manufacturer and seller of paper products in Middletown, Ohio. *Deposition of Alan Berens*, ("Berens Dep."), at 21–26. Specifically, Miami produces wax paper which is used for food packaging and storage. *Id.* The defendant, Hollymatic Corporation ("Hollymatic") manufactures and distributes food processing equipment and supplies and is located in Countryside, Illinois. *Deposition of Victoria Morton*, ("Morton Dep."), at 4–5.

In January 1987, Hollymatic contracted with Webtec to purchase Webtec's innovative, but unfinished, patty paper converter. *See* Ex. 4, *Deposition of Lawrence Reedy*, ("Reedy Dep."), at 45–47. In March 1987, Hollymatic entered into an overall agreement with Miami.[1] The relevant portions of their agreement consisted of a sub-lease and a contract. In the contract, Miami agreed to supply Hollymatic with the rolls of wax paper required for its new patty paper converter once the machine began operation. *See* ex. 7 to doc. 16. The contract did not specify the quantity of wax paper to be sold; rather, the contract stated that "[t]he Seller [Miami] shall sell to the Buyer [Hollymatic] and the Buyer shall purchase from the Seller its entire raw material demands ... which Buyer shall require...." Ex. 7 to doc. 16, at 2.

The contract between Hollymatic and Miami had an integration clause.[2] Miami contends, however, that the contract did not reflect the full agreement between the parties. *See* Brief for Plaintiff, doc. 35, at 4. Furthermore, Schedule A in the contract omitted any mention of the actual quantity of wax paper that Hollymatic estimated that it would need for its patty paper converter. Nevertheless, Miami asserts that Hollymatic provided it with estimates outlining Hollymatic's previous requirements for wax paper both before and after the date of the parties' contract. *Id.*

Webtec's machine purchased by Hollymatic never produced proper patty paper. Instead, after thirty months of work by Hollymatic, the machine was only one-third operational and could only produce a relatively small amount of interleaver paper, not patty paper. *Reedy Dep.*, at 130–140. Hollymatic had spent almost double its original estimate of $425,000 in an attempt to make the machine fully operational. *Morton Dep.*, at 100–03. Moreover, the actual project took almost triple the original ten-month projection.

In December 1988, James Azaar purchased a controlling interest in Hollymatic. *Deposition of James Azaar*, ("Azaar Dep."), at 18. At the time of the purchase, James Azaar was principal shareholder in Bomarko Corporation. Bomarko Corporation ("Bomarko") sells wax paper products, and thus is a competitor of Miami. *Reedy Dep.*, at 107. Six months after Azaar's purchase of Hollymatic, Hollymatic terminated the patty paper converter project. Ex. 13 to doc. 16. The defendant, Hollymatic, believed that the new patty paper converter was never going to be operational when it terminated the project. *Reedy Dep.*, at 82. Miami never supplied Hollymatic with the quantity of wax paper that Miami contends the parties expected when the contract was formed. Furthermore, Hollymatic now buys any wax paper it needs exclusively from Bomarko. *Reedy Dep.*, at 107–09.

Miami sued Hollymatic for damages on six counts. Counts I through V are before the Court on defendant's motion for summary judgment. Miami alleges in Count I that Hollymatic's termination of its patty paper converter was not in good faith. Count II asserts that the discontinuance of wax paper was an unreasonably disproportionate deviation from Hollymatic's stated estimates. Miami alleges in Count III that Hollymatic did not use its best efforts to promote the sale of converted wax paper. Counts IV and V assert claims for promissory estoppel and negligent misrepresentation respectively. Hollymatic, the defendant has moved for summary judgment.

## STANDARD

The narrow question that we must decide on a motion for summary judgment is whether there is "no genuine issue as to

---

1. Technically, Hollymatic did not contract with Miami. The party to a contract is another corporation called Processing Systems, Inc. ("PSI"). The defendant concedes for purposes of this motion that Hollymatic has the same obligations as PSI under the agreement with Miami. Brief for Defendant, doc. 16, at 2.

2. The contract provided that "[t]his instrument is intended by the parties as a final expression of their Agreement and as a complete and exclusive statement of its terms...." Ex. A to doc. 35 at 10.

any material fact and [whether] the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only whether there are issues to be tried. *In re Atlas Concrete Pipe, Inc.,* 668 F.2d 905, 908 (6th Cir.1982). The moving party "has the burden of showing *conclusively* that there exists no genuine issues as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.) (emphasis original), *cert. denied,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). And, "while the movant's papers are to be closely scrutinized, those of the opponent are to be viewed indulgently." *Id.* at 63. "[T]he District Court [is] obligated to consider not only the materials specifically offered in support of the motion, but also all 'pleadings, depositions, answers to interrogatories, and admissions' properly on file and thus properly before [the] court." *Id.* (quoting Rule 56(c), Fed.R.Civ.P.). Summary judgment "must be used only with extreme caution for it operates to deny a litigant his day in court." *Id.* We are further guided by the Supreme Court's relatively recent elaboration of this standard in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial ....

477 U.S. at 322, 106 S.Ct. at 2552. Summary judgment is not appropriate if a dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## COUNT I

Miami alleges in Count I that Hollymatic's termination of its patty paper converter was not in good faith. Miami's agreement to sell all of Hollymatic's wax paper needs for the patty paper converter constitutes a requirements contract. *See Black's Law Dictionary,* 1172 (5th ed. 1979). The governing law in Ohio for requirements contract states:

> (A) A term which measures the quantity by the output of the seller or the requirements of the buyer means such actual output or requirements as may occur in good faith, except that no quantity unreasonably disproportionate to any stated estimate or in the absence of a stated estimate to any normal or otherwise comparable prior output or requirements may be tendered or demanded.
> (B) A lawful agreement by either the seller or the buyer for exclusive dealing in the kind of goods concerned imposes unless otherwise agreed an obligation by the seller to use best efforts to supply the goods and by the buyer to use best efforts to promote the sale.

Ohio Rev.Code § 1302.19 (1990) (adopting in whole § 2–306 of the Uniform Commercial Code).

Defendant Hollymatic argues that a party to a requirements contract may eliminate all of its requirements when done in good faith. Brief for Defendant, doc. 16, at 14. The defendant cites several cases for the proposition that the buyer in a requirements contract may make no purchases whatsoever, provided the buyer has acted in good faith. *Id* (citing e.g., *R.A. Weaver & Assoc., Inc. v. Asphalt Const., Inc.,* 587 F.2d 1315 (D.C.Cir.1978)).

This Court does not challenge Hollymatic's contention that the buyer may make no purchases in a requirements contract. *R.A. Weaver,* 587 F.2d at 1321; *see also HML Corp. v. General Foods Corp.,* 365 F.2d 77, 81 ("[[t]he better view ... is that generally the buyer in a requirements contract is required merely to exercise good faith in determining his requirements ... even to the extent of a determination to liquidate or discontinue the business.").

Nevertheless, Ohio Rev.Code § 1302.19 still requires that the buyer act in good faith when the buyer chooses not to make any purchases in a requirements contract. Official Comment 2 to Ohio Rev.Code § 1302.19 sets forth this principle:

A shut down by a requirements buyer for lack of orders might be permissible when a shutdown merely to curtail losses would not. The essential test is whether the party acted in good faith.

In the case before this Court, it is unclear whether the defendant has indeed acted in good faith. Under Sixth Circuit law, Hollymatic has "the burden of showing *conclusively* that there exists no genuine issues as to a material fact...." *Smith*, 600 F.2d at 63 (emphasis in original). Hollymatic has not met this burden with regard to whether it acted in good faith in its dealings with Miami.

Indisputably, Hollymatic plunged much more money and time into the patty paper converter than anticipated. However, these facts, in and of themselves, are not dispositive on the issue of whether Hollymatic acted in good faith. Hollymatic terminated the project six months after James Azaar purchased a controlling interest in Hollymatic. Mr. Azaar also owned Bomarko, a competitor of Miami. Hollymatic may have made no purchases of wax paper in order to aid Mr. Azaar's interest in Bomarko. Alternatively, Hollymatic may have made no purchases from Miami because of the time delays and cost overruns. Thus, a genuine question of fact remains whether Hollymatic acted in good faith. *See also Clarke v. Hartley*, 7 Ohio App.3d 147, 454 N.E.2d 1322 (1982) (issues of good faith are generally questions of fact for the jury). Accordingly, defendant's motion for summary judgment is denied on Count I.

## COUNT II

In Count II, Miami alleges that Hollymatic's lack of requirements for wax paper was unreasonably disproportionate to its stated estimates for wax paper. Under the relevant statute, in a requirements contract "no quantity unreasonably disproportionate to any stated estimate or in the absence of a stated estimate to any normal or otherwise comparable prior output or requirements may be tendered or demanded." Ohio Rev.Code § 1302.19(B).

The actual agreement between Miami and Hollymatic contained no stated estimates. *See* Ex. A, Schedule A, doc. 16. Moreover, the agreement contained an integration clause. Miami contends, however, that Hollymatic gave Miami stated estimates before and after the formation of the requirements contract. Brief for Plaintiff, doc. 35, at 4. Evidence exists that Hollymatic did give Miami stated estimates prior to the contract. *Deposition of Hobart Lake* ("Lake Dep."), at 101–103. However, under the parol evidence rule, prior negotiations or agreements between the parties may not be introduced to vary the terms of the written contract. *See e.g., Uebelacker v. Cincom Systems, Inc.*, 48 Ohio App.3d 268, 549 N.E.2d 1210 (1988). Therefore, this Court finds as a matter of law that any stated estimates that Hollymatic may have provided Miami prior to the formation of the contract should not be considered.

Miami also contends that Hollymatic gave Miami stated estimates after the formation of the requirements contract. Brief for Plaintiff, doc. 35, at 4. In construing the evidence in the light most favorable to the non-moving party, Hollymatic appears to have provided documentation after the formation of the contract indicating that Hollymatic would require 6.7 million pounds of paper per year. *Berens Dep.*, at 78; Ex. B, doc. 35. Nevertheless, Hollymatic did not purchase any paper from Miami.

Reasonable minds could differ over whether Hollymatic's actual demand for wax paper was unreasonably disproportionate to its stated estimate. Hollymatic provided stated estimates to Miami of 6.7 million pounds of paper after the formation of the Miami's and Hollymatic's contract. As it turned out, Hollymatic required no wax paper. A reasonable jury could conclude that Hollymatic's post-contract estimate was unreasonably disproportionate to its

needs. Accordingly, defendant's motion for summary judgment is denied on Count II.

## COUNT III

In Count III, Miami claims that Hollymatic failed to use its "best efforts" to promote the sale of Miami's wax paper products. Ohio Rev.Code § 1302.19 requires "the seller to use best efforts to supply the goods and ... the buyer to use best efforts to promote their sale." The test for best efforts is one of reasonableness. Ohio Rev.Code § 1302.19, Official Comment 5 (requiring "reasonable effort and due diligence" in exclusive dealing contracts).

Hollymatic has failed to meet its burden in moving for summary judgment on Count III, as there are genuine issues of material fact. On a motion for summary judgment, the facts must be examined in the light most favorable to the non-moving party. Hollymatic may have terminated the patty paper project because of cost overruns and time delays. However, Hollymatic may have terminated the project to profit its controlling shareholder, James Azaar. Reasonable minds could differ over whether Hollymatic acted reasonably and with good faith in promoting the sale of Miami's wax paper products. The issue of whether Hollymatic used best efforts is a question of fact for the jury. Accordingly, defendant's motion for summary judgment is denied on Count III.

## COUNT IV

■ Count IV alleges that the defendants are liable under the theory of promissory estoppel. In Ohio, promissory estoppel is defined as a "... promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person...." *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 104, 483 N.E.2d 150, 154 (1985) (quoting *Talley v. Teamsters Local No. 377*, 48 Ohio St.2d 142, 146, 357 N.E.2d 44, 47 (1976)). Miami received written estimates of Hollymatic's projected demands for wax paper after contracting with Hollymatic.

Miami claims to have relied upon these estimates. Miami adds that any question as to the reasonableness of Miami's reliance is for the jury.

Miami, however, concedes that patty paper project was "unique...." Brief for Plaintiff, doc. 35, at 4. Upon entering the contract, Miami realized that Hollymatic's needs were contingent upon the production of a new, innovative product. Miami's president acknowledged in his deposition that he knew the project might not come to fruition. *Lake Dep.*, at 69–70. Moreover, Miami is in the business of producing wax paper which is generally used for food packaging and storage.

Taken together, these facts demonstrate that Miami knew or should have known of the risks that the new patty paper converter might not function properly. Miami and Hollymatic engaged together upon a risky undertaking. Therefore, as a matter of law Miami could not have reasonably relied upon Hollymatic's projections concerning a machine that had never before operated. Accordingly, defendant's motion for summary judgment on Count III is granted.

## COUNT V

■ Miami alleges in Count V that Hollymatic is liable for negligent misrepresentation. Negligent misrepresentation occurs when

> [o]ne who, in the course of his business ... supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their *justifiable reliance* upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Delman v. City of Cleveland Heights*, 41 Ohio St.3d 1, 4, 534 N.E.2d 835, 838 (1989) (emphasis in original) (quoting 3 *Restatement of the Law 2d*, Torts (1965) 126–27, § 552(1); *see also Zuber v. Dept. of Ins. of Ohio*, 34 Ohio App.3d 42, 516 N.E.2d 244 (1986) (false information and reliance are elements of negligent misrepresentation).

Miami cannot demonstrate justifiable reliance upon Hollymatic's estimates. As discussed above in Count IV, Miami knew or should have known of the risks that Hollymatic's patty paper converter might not properly operate. No reasonable jury could find that Miami justifiably relied upon Hollymatic's stated estimates. Accordingly, the defendant's motion for summary judgment is granted on Count V.

## DAMAGES

 Hollymatic contends that Miami's claim for damages are too speculative and therefore are unrecoverable. Generally, a plaintiff may recover for any loss he or she has recovered as a result of the defendant's breach of contract. 30 O.Jur.3d *Damages* § 90 (1991). The amount the plaintiff may recover includes lost profits. *Id.* Lost profits may be recovered if (1) the profits were within the contemplation of the parties at the time of contracting (2) the loss of profits is the probable result of breach, and (3) the profits can be shown with reasonable certainty. Brief for Defendant, doc. 16, at 24, 25 (citing *Gahanna v. Eastgate Properties, Inc.*, 36 Ohio St.3d 65, 68, 521 N.E.2d 814, 818 (1988) (quoting *Charles R. Combs Trucking, Inc. v. International Harvester Co.*, 12 Ohio St.3d 241, 466 N.E.2d 883 (1984)).

Miami may not recover if its profits are too remote or speculative. *See Gahanna*, 36 Ohio St.3d 65, 521 N.E.2d 814. However, damages for lost profits often require some conjecture, particularly contracts spanning a lengthy period of time. *See Jaynes v. Vetel*, 51 Ohio L.Abs. 202, 207, 80 N.E.2d 621, 624 (1948) ("profits must in their very nature be to some extent uncertain and conjectural, so that one cannot on that account, or account of difficulties in the way of proof, be deprived of all remedy.").

The issue of whether damages are reasonably certain is generally a question of fact for the jury. *See e.g., Arledge v. Braun*, No. 1528, 1990 WL 104983 (Ohio App. June 25, 1990) (LEXIS, States Library, Ohio file). In the case at bar, the plaintiff's claim for damages is not too remote or speculative as a matter of law. The plaintiff allegedly suffered damages from a twenty-five year requirements contract supplying wax paper for an innovative machine. Indisputably, calculating these damages involves some conjecture. However, it would be unfair and against the weight of authority to bar the plaintiff from any potential recovery. Rather, the jury must weigh and consider the extent of the plaintiff's damages, if any.

Accordingly, we hereby deny the defendant's motion for summary judgment on Counts I, II, and III, and we hereby grant the defendant's motion for summary judgment on Counts IV and V.

SO ORDERED.