**ARMCO, INC., Plaintiff,**

v.

**BURNS & McDONNELL,** [*] **INC., Defendant.**

**Case No. C-1-90-766.**

United States District Court, S.D. Ohio.

Sept. 23, 1992.

Mark Alan Vander Laan, Dinsmore & Shohl, Cincinnati, Ohio and Philipp B. Konrad Knake, Jr., New York City, for plaintiff/counterdefendant.

James Eugene Burke, Keating, Muething & Klekamp, Cincinnati, Ohio, Randall E. Hendricks, Kansas City, Mo., and Robert Gerard Sanker, and James Eugene Burke, Keating, Muething & Klekamp, Cincinnati, Ohio, for defendant/counterclaimant.

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE DEFENDANT'S COUNTERCLAIM

SPIEGEL, District Judge.

This matter is before the Court on the Plaintiff's Motion for Summary Judgment on the Defendant's counterclaim (doc. 20), the Defendant's Response (doc. 28), and the Plaintiff's Reply (doc. 33).

Although the facts of this commercial dispute are relatively complex, the legal issue before the Court presents a straightforward application of the parol evidence rule.

### BACKGROUND

Before December 31, 1985, Armco owned three engineering subsidiaries, one of which was Burns & McDonnell. In 1985, Armco needed cash and decided to sell off Burns & McDonnell. Armco sought offers from third parties, as well as from the employees of Burns & McDonnell. After evaluating those offers, Armco agreed with the employees of Burns & McDonnell that they could purchase Burns & McDonnell via a Stock Purchase Agreement. Part of the purchase price was contingent upon the success of the Burns & McDonnell over the course of the five years following the Stock Purchase Agreement. Specifically, the Stock Purchase Agreement provided that Burns & McDonnell would pay Armco $8 million up front and a maximum of $3 million based upon the net operating cash flow of Burns & McDonnell, as defined in the Stock Purchase Agreement. In its

Complaint, Armco alleges that Burns & McDonnell has failed to appropriately calculate net operating cash flow. As a result, Armco argues that Burns & McDonnell has failed to pay money owed to Armco under the Stock Purchase Agreement.

In response, Burns & McDonnell filed a counterclaim against Armco for what essentially amounts to a claim for breach of contract. The counterclaim is the only matter before this Court at this time. The counterclaim involves a computer-aided design system ("CADD") system, used by engineering firms such as Burns & McDonnell. Prior to December 31, 1985, Armco owned three engineering subsidiaries: Burns & McDonnell, Wilbur Smith & Associates ("Wilbur Smith"), and Bovay Engineering ("Bovay"). Together with a construction company, these three engineering subsidiaries comprised the Professional Services Division of Armco.

In 1984, the Professional Services Division of Armco decided to purchase the CADD system for the benefit of all three engineering companies. Several months later, however, due to cash flow needs, Armco sold the CADD system to General Foods Credit Corporation. Armco then directed Burns & McDonnell to lease-back the CADD system from General Foods Credit Corporation for five years. Next, Armco had Wilbur Smith and Bovay enter into subleases with Burns & McDonnell to use the CADD system. Burns & McDonnell contends that Armco required Burns & McDonnell to enter the lease-back agreement with General Foods Credit Corporation in spite of the fact that Burns & McDonnell did not have use for all of the equipment and capacity of the CADD system.

During the 1985 negotiations for the sale of Burns & McDonnell, Armco and Burns & McDonnell had discussions concerning Burns & McDonnell's sublease with Wilbur Smith and Bovay. Burns & McDonnell requested that Armco either assume or guarantee Wilbur Smith's and Bovay's sublease payments. In the alternative, Burns & McDonnell sought Armco's promise to force Wilbur Smith and Bovay to execute new subleases. Throughout the negotiations, Armco refused to guarantee Wilbur Smith's and Bovay's payments on the subleases. However, Burns & McDonnell claims that Armco orally agreed on December 16, 1985 to have Wilbur Smith and Bovay to execute new subleases with Burns & McDonnell during the final negotiation session over the Stock Purchase Agreement.

Subsequently, Bovay signed a new sublease, but Wilbur Smith refused. Burns & McDonnell avers that Armco breached its oral contract by not requiring Wilbur Smith to enter into a new sublease with Burns & McDonnell. Burns & McDonnell now claims damages from this alleged breach of contract of $400,000.

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there exists a "... genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only whether issues exist that should be tried. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982).

The moving party "has the burden of showing *conclusively* that there exists no genuine issues as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.) (emphasis in original), *cert. denied*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). Moreover, "while the movant's papers are to be closely scrutinized, those of the opponent are to be viewed indulgently." *Id.* at 63. "[T]he District Court [is] obligated to consider not only the materials specifically offered in support of the motion, but also all 'pleadings, depositions, answers to interrogatories, and admissions' properly on file and thus properly before [the] court." *Id.* (quoting Rule 56(c), Fed.R.Civ.P.).

Summary judgment "must be used only with extreme caution for it operates to deny a litigant his day in court." *Id.* The Supreme Court elaborated upon this standard, in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial....

*Id.* at 322, 106 S.Ct. at 2552. Summary judgment is not appropriate if a dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Nevertheless, conclusory allegations are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir.1990).

## DISCUSSION

Burns & McDonnell alleges that Armco made a "commitment and oral agreement" on December 16, 1985 to have Wilbur Smith and Bovay enter into new subleases with Burns & McDonnell. Counterclaim, ¶ 9, doc. 6, at 10. On December 31, 1985, Armco and Burns & McDonnell entered into the Stock Purchase Agreement for the sale of Burns & McDonnell. In the Stock Purchase Agreement, the parties dealt with Burns & McDonnell's obligations concerning the CADD system in section 9.8:

> The Seller [Armco] understands that the Company [Burns & McDonnell] is a party to two agreements pertaining to the use of certain computer equipment leased by the Company from General Foods Credit Corporation ... and that the Company is attempting to negotiate amendments to each of these agreements. The Purchaser agrees that the Seller shall have no

liability or responsibility for any of said agreements, and further agrees that the amendment of any of said agreements is not a condition precedent to the consummation of the transactions herein completed.

The Stock Purchase Agreement also set forth a strict integration clause in section 20:

> This Agreement sets forth the entire agreement and understanding of the parties, superseding all prior or contemporaneous written or oral agreements, undertakings, promises, warranties, or covenants not specifically referred to, attached hereto or contained herein. This Agreement may be amended, modified or terminated only by a written instrument signed by the parties hereto.

This Court must consider whether under Ohio law [1] this integration clause precludes this Court from considering Armco's alleged "commitment and oral agreement" to have Wilbur Smith and Bovay enter into new subleases with Burns & McDonnell. Generally, integration clauses should be enforced. *See generally, Sparhawk v. Gorham,* 101 Ohio App. 362, 364, 139 N.E.2d 652, 654 (Ohio Ct.App.1956). Thus, under the parol evidence rule "prior ... agreements between the parties may not be introduced to vary the terms of the written contract." *Miami Packaging, Inc. v. Processing Systems, Inc.,* 792 F.Supp. 560 (S.D.Ohio 1991) (J. Spiegel).

With Ohio law in mind, we must turn to the case now before the Court. In its counterclaim, Burns & McDonnell assert that Armco made an oral commitment to have Wilbur Smith and Bovay enter into new subleases with Burns & McDonnell. This alleged oral commitment was made in the midst of the negotiations over the sale of Burns & McDonnell via the Stock Purchase Agreement. Moreover, this alleged oral commitment is in direct conflict with the Stock Purchase Agreement, which was signed approximately ten days later. Finally, the Stock Purchase Agreement ex-

---

**1.** The Stock Purchase Agreement provides that all disputes as to the contract should be resolved according to the law of Ohio. Neither party has objected to the application of Ohio law, and therefore this Court will decide this matter under Ohio law.

plicitly states that any previous oral agreements by the parties were no longer valid.

The Stock Purchase Agreement was a multimillion dollar transaction—the product of intense negotiations between the parties, attorneys, and investment bankers. Burns & McDonnell had to decide whether to contract with Armco. Aided by their advisors, Burns & McDonnell opted to sign the Stock Purchase Agreement. Armco may have been a demanding party with which to negotiate, but that does not excuse Burns & McDonnell from its rights and obligations outlined in the Stock Purchase Agreement.

To hold otherwise would introduce unnecessary uncertainty into commercial dealings. The legal system should give commercial actors some certainty in order to foster the formation of business relationships. If this Court were to ignore the integration clause in the Stock Purchase Agreement and consider parol evidence, we would thwart the clear language of the parties' contract.

We cannot consider parol evidence that is in direct conflict with clear contractual language. The parol evidence rule precludes consideration of the alleged oral agreement reached between Armco and Burns & McDonnell on December 16, 1985. Therefore, without considering parol evidence, we conclude that Armco did not breach an oral commitment with Burns & McDonnell to have Wilbur Smith and Bovay to enter into new subleases with Burns & McDonnell.

### CONCLUSION

Accordingly, the Plaintiff's Motion for Summary Judgment on the Defendant's counterclaim is granted. The parties shall submit an amended Final Pre–Trial Order to this Court by October 2, 1992, reflecting this decision.

SO ORDERED.