PADGETT et al., Appellants and Cross–Appellees,

v.

SANDERS et al., Appellees and Cross–Appellants.

[Cite as *Padgett v. Sanders* (1998), 130 Ohio App.3d 117.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

No. CA97–12–114.

Decided Sept. 28, 1998.

118

*Frost & Jacobs* and *Joyce Ann Campbell,* for plaintiffs-appellants and cross-appellees.

*W. Kenneth Zuk,* for appellees and cross-appellants.

·WILLIAM W. YOUNG, Presiding Judge.

This case concerns the fraudulent concealment of defects in a residential property sale. The trial court found that the sellers and appellees, Eugene and Jean Sanders, failed to disclose and fraudulently concealed certain defects until the sale was completed. Accordingly, the trial court awarded compensatory damages to the buyers and appellants, David and Amy Padgett, to repair the defects. On appeal, appellants claim that the trial court erred by failing to award them punitive damages, attorney fees and damages for diminution in the market value of the property. On cross-appeal, appellees argue that the trial court erred

by finding that appellees committed fraud. In addition, appellees claim that appellants failed to prove their compensatory damages. We affirm.

Before the sale, appellants viewed appellees' house on two separate occasions with their real estate agent. According to the testimony at trial, one of the basement walls was not visible because the door to the adjacent laundry room was open and furniture was piled against the wall. After the two viewings, appellants decided to buy the house.

Appellants received the mandatory residential property disclosure form from appellees. See R.C. 5302.30. The form indicated that the house had an underground fuel oil tank. Appellants were concerned because "you don't know what something is doing when it's underground." As a result of their apprehension, an addendum was added to the contract that states that "[t]his contract is contingent upon buyers' satisfaction with the resolution of the underground oil tank."

On August 2, 1994, appellants executed a contract to purchase appellees' home for $121,500. The closing occurred in October 1994. After the closing, appellants met with appellees. At that meeting, appellees mentioned that there was an electrical short in the house and that, during a previous renovation, some of the hardwood flooring in the house had been replaced with plywood.

After moving into the house, appellants discovered a fuel oil stain on the previously obstructed basement wall. Later, appellants also found a fuel oil stain in the back yard of the property. The record indicates that the source of the basement wall stain was likely the cumulative result of small overflows when the fuel oil tank was refilled. Eventually, the overflows seeped from the soil around the tank into the foundation and the basement wall. The fuel oil contamination in the back yard appears to have been from a discharge pipe on the side of the house.

Following these discoveries, appellants forwarded their concern about these problems to appellees. Appellees responded in a March 2, 1995 letter, which essentially conceded the missing hardwood flooring and electrical short. As to the fuel oil contamination, appellees did concede that "[t]here is some soil contamination" from overflows when the tank was filled, but indicated that it was not a serious problem.

Appellants filed a complaint against appellees on April 5, 1995. A bench trial occurred on February 18, 1997. On March 26, 1997, the trial court entered its findings of fact, conclusions of law and decision. The court found appellees responsible for the cost of repairing the electrical short and hardwood flooring. In addition, the court concluded appellees were responsible for knowingly concealing the fuel oil contamination on the basement wall. However, the trial court

ruled that appellees were not responsible for the contamination in the back yard because the evidence did not show that appellees were aware of that portion of the contamination.

After a separate hearing, the court awarded appellants compensatory damages of $4,231 for repairs. However, the court denied appellants' claims for punitive damages and attorney fees. From the rulings, appellants filed a timely notice of appeal with two assignments of error for our review. Appellees subsequently filed a cross-appeal with two cross-assignments of error. We begin with appellants' assignments of error:

Assignment of Error No. 1:

"The trial court abused its discretion by not awarding the Padgetts punitive damages and attorney fees."

Assignment of Error No. 2:

"The trial court erred by not awarding the Padgetts damages for the diminution in value of the residence due to the fuel oil contamination."

In appellants' first assignment of error, they argue that the trial court erred in failing to award them punitive damages and attorney fees. We address each issue separately.

In order to award punitive damages due to fraud, appellants must have shown that "the fraud is aggravated by the existence of malice or ill will, or must demonstrate that the wrongdoing is particularly gross or egregious." *Charles R. Combs Trucking, Inc. v. Interntl. Harvester Co.* (1984), 12 Ohio St.3d 241, 12 OBR 322, 466 N.E.2d 883, paragraph three of the syllabus. Malice requires that "the defendant possessed either (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Cabe v. Lunich* (1994), 70 Ohio St.3d 598, 601, 640 N.E.2d 159, 162. The decision to award punitive damages is within the trial court's discretion. *Id.* at 602–03, 640 N.E.2d at 162–164. Absent an abuse of discretion, the trial court's ruling on punitive damages will be upheld. *Id.*

In this case, the trial court's ruling that appellants were not entitled to punitive damages was within its discretion. The trial court could have reasonably concluded that appellees were not inspired by malice or ill will. Although the trial court found that the fuel oil contamination on the basement wall was knowingly concealed, the evidence does not show that appellees consciously disregarded the risk to appellants' health or safety. See *Combs Trucking* at paragraph three of syllabus. Appellants cite case law in which punitive damages were upheld in other residential property defect cases. See, *e.g., Davis v. Sun*

*Refining & Mktg. Co.* (1996), 109 Ohio App.3d 42, 58, 671 N.E.2d 1049, 1060; *Lance v. Bowe* (1994), 98 Ohio App.3d 202, 210, 648 N.E.2d 60, 65–66. However, in all of these cases, the appellate court merely upheld a punitive damage award by concluding that the trial court acted within its considerable discretion. In order to reverse the trial court's decision for an abuse of discretion, an appellate court must find that the trial court abused its discretion by acting in an arbitrary, unreasonable or unconscionable manner. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1141–1142. The facts in this particular case do not support a finding of an abuse of discretion.

We now address the issue of attorney fees. If punitive damages are properly awarded, "the aggrieved party may also recover reasonable attorney fees * * *." *Combs Trucking*, 12 Ohio St.3d at 245, 12 OBR at 326, 466 N.E.2d at 888. However, the majority rule is that "[w]ithout a finding of malice and the award of punitive damages, plaintiff cannot justify the award of attorney fees, unless there is a basis for sanctions under Civ.R. 11." *Tulloh v. Goodyear Atomic Corp.* (1994), 93 Ohio App.3d 740, 756, 639 N.E.2d 1203, 1213. At a minimum, the record must support a finding that the legal standard for punitive damages could have been met before attorney fees are awarded. See *Atram v. Star Tool & Die Corp.* (1989), 64 Ohio App.3d 388, 392, 581 N.E.2d 1110, 1112–1113.

The trial court having acted within its discretion by concluding that appellants failed to meet the legal standard for punitive damages, appellants were properly denied attorney fees. See *id.* Accordingly, appellants' first assignment of error is overruled.

In appellants' second assignment of error, they argue that the trial court erred by failing to award appellants damages for diminution in the market value of their home. Generally, a party injured by fraud can receive damages "naturally and proximately resulting from the fraud." *Brewer v. Brothers* (1992), 82 Ohio App.3d 148, 154, 611 N.E.2d 492, 496. When fraud induces the purchase of real estate, damages are measured as the difference between the value of the property as presented and the actual value at the time of sale. *Id.* Under some circumstances, the cost of repair or replacement of a defect has been used as an alternative measure of damages. *Id.*, citing *Lyons v. Orange* (May 4, 1982), Montgomery App. No. CA 7566, unreported. A practical consideration is whether the value of a property with and without a certain defect can be established. *Id.*

At trial, David McFarland, a licensed real estate appraiser, testified for appellants. McFarland testified that local banks will not finance a residential sale for a house with soil contamination. McFarland was asked about the loss in

value after the fuel oil was removed.   McFarland replied that "[i]t's hard to say. I would say at least it's lost fifty percent of its value."   McFarland admitted that he could not document this conclusion, but stated it was based on his experience as an appraiser in local markets.   On cross-examination, McFarland conceded that most of his examples in diminution in value due to soil contamination dealt with commercial, not residential real estate.   McFarland was not familiar with the extent of the soil contamination at appellants' home.

Appellants testified as to the diminution in value of the property.   Amy Padgett felt the reduction from market value was ten to fifteen percent.   David Padgett concluded that the diminution was probably ten to fifteen percent "at a minimum."

We find that the trial court could have fairly concluded that appellants failed to prove damages due to diminution in the resale value of the house.   The testimony of the appraiser was somewhat vague and inconclusive and failed to relate his expert opinion to the specific facts of this case.   Appellants' testimony presented more modest assessments in loss of market value due to the fuel oil contamination.   However, even appellants' assessments appear to be little more than a guess.   Amy Padgett stated that her conclusion was based on what she would offer for the house.   David Padgett admitted that he did not know what the loss in value was and then suggested ten to fifteen percent.   In short, the trial court was entitled to conclude that McFarland and appellants failed to support their conclusions.   Therefore, without sufficient credible evidence supporting market diminution, a reasonable assessment of damages was the cleanup cost of the fuel oil contamination.   *Brewer*, 82 Ohio App.3d at 152, 611 N.E.2d at 494–495. Accordingly, appellants' second assignment of error is overruled.

We now turn to appellees' cross-appeal, which raises two assignments of error:

Cross–Assignment of Error No. 1:

"The trial court erred in finding that defendants–appellees were responsible for damages in the clean–up of soil."

Cross–Assignment of Error No. 2:

"The trial court erred in finding actionable fraud with respect to oil contamination."

In appellees' first cross-assignment of error, they assert that the trial court erred in finding them liable to appellants for repairs resulting from the fuel oil contamination on the basement wall.   Based on the testimony of Martin Heckert of the Vector Group, an environmental contractor, the trial court awarded $3,250 in compensatory damages for cleanup costs.   The cleanup largely

consisted of removing the soil near the fuel tank, which was the probable source of the fuel oil contamination on the basement wall.

Appellees' argument is that since there are currently no environmental regulations governing the acceptable level of fuel oil for soil on residential property, the trial court erred by awarding any compensatory damages for cleanup costs. This argument is not well taken. The testimony indicated that the fuel oil contamination was a potential health hazard and that Heckert made a professional assessment of reasonable cleanup costs. The evidence established that the fuel oil contamination on the basement wall could be cleaned by removing the source of the fuel oil contamination, the soil near the underground storage tank. We find that $3,250 is a reasonable damage award for the Vector Group to remove the source of the fuel oil contamination on the basement wall. Therefore, appellees' first cross-assignment of error is overruled.

In appellees' second cross-assignment of error, they argue that the trial court erred in finding that appellees' concealment of the fuel oil contamination in the basement amounted to fraud. We disagree.

The elements of fraud are (1) a representation or, where there is a duty to disclose, concealment, (2) which is material, (3) made falsely, with knowledge of its falsity or with reckless disregard for the truth, (4) with the intent to mislead, (5) justifiable reliance upon the representation or concealment, and (6) resulting injury proximately caused by the justifiable reliance. *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 55, 514 N.E.2d 709, 711–712.

The evidence entitled the trial court to conclude that the fuel oil contamination that resulted in the stain on the basement wall was knowingly concealed by appellees. The contamination was material and appellees' actions effectively made the basement wall inaccessible when appellants viewed the house prior to the sale. Also, appellants testified that they relied on the residential property disclosure form, which failed to indicate the problem. In short, the evidence was sufficient for the trial court to find fraudulent concealment by appellees.

Finally, appellees implicitly raise the doctrine of caveat emptor. Caveat emptor precludes recovery where (1) a defect is discoverable upon reasonable inspection, (2) the purchaser had an unimpeded opportunity to inspect the premises and (3) the seller did not commit fraud. *Moravek v. Hornsby* (July 14, 1997), Clermont App. No. CA96–12–113, unreported, at 5–6, 1997 WL 397012. Since appellants were not given an unimpeded opportunity to examine the premises and appellees' actions constituted fraudulent concealment, caveat emp-

tor does not apply to this case. Accordingly, appellee's second cross-assignment of error is overruled.

*Judgment affirmed.*

KOEHLER and POWELL, JJ., concur.