DECISION.
Plaintiffs-appellants Vincent Anginoli, Harding Bolling, Don Granger, and Mark Riley, owners of two units in the Adams Place luxury high-rise condominiums located near the Cincinnati riverfront, brought this action claiming that the building owner fraudulently hid knowledge of water infiltration and security problems from them, and that the building's real estate agents breached their fiduciary duties by scuttling the sale of unit 4500 from Anginoli and Bolling to Granger and Riley. The appellants appeal from the trial court's September 3, 1998, entries of summary judgment for the Benenson defendants-appellees[1]
and for the MK Real Estate defendant-appellees,[2] and from the trial court's ruling on additional time for discovery. Because no triable issues of fact exist on causation and damages, essential elements of the appellants' claims, the trial court properly entered summary judgment.
While the Adams Place building was still under construction on November 19, 1993, appellants Anginoli and Bolling purchased and took possession of unit 4500. The purchase price was $280,000. After the purchase of unit 4500, the MK Real Estate appellees became listing agents for sales of Adams Landing units developed by Benenson Capital Company.
In early 1994, following completion of construction, signs of water infiltration into interior portions of the upper-level penthouses were first discovered. The Adams Place disclosure statement was amended to indicate a "small leakage problem." Appellee Benenson hired an outside consultant to investigate the water problem. Despite efforts to fix the problem, the leaks continued and the disclosure statement was modified in April 1995 to read, [T]here is limited water infiltration in several of the Units and the Garage. The Developer is in the process of investigating and correcting the water infiltration under its warranty. The document also mentioned a then-pending lawsuit by a tenant pursuing breach-of-warranty claims.
In June 1995, Anginoli and Bolling sought to move to a more expensive condominium in Adams Place, unit 6300. Anginoli and Bolling signed an agreement with the MK Real Estate appellees and listed their unit for sale. At about the same time, appellant Riley, a licensed real estate agent acting for appellant Granger, approached Anginoli and Bolling to purchase unit 4500. The parties signed a contract with the purchase made contingent on Granger and Riley obtaining financing and selling their Walsh Road residence.
MK Real Estate, the listing agent for Adams Place and agent for Anginoli and Bolling, then showed the more expensive, unit 9500 to Granger and Riley, even offering a "trial run" period of occupancy. On August 31, 1995, Granger and Riley moved into unit 9500, and they later completed their purchase of the unit on September 18, 1995, for $341,000.
Following the unit 9500 purchase, the leakage problem became more extensive, ultimately requiring over $8 million to fix. No party alleges, however, that any of the units at issue here suffered from water leaks.
In September 1995, Anginoli and Bolling sued Riley and Granger on the unfulfilled sales contract. That lawsuit was settled by the parties and voluntarily dismissed in March 1996. In June 1996, the four appellants filed this action.
In July 1998, the record indicates that unit 4500's appraised value was $320,000. Unit 9500 was valued at $410,000.
Motion for Additional Discovery
In their first assignment of error, appellants contend that the trial court erred in granting summary judgment for the appellees when discovery had yet to be completed. The appellants ultimately filed their memoranda in opposition, and the trial court entered summary judgment notwithstanding their filing of a Civ.R. 56(F) motion and affidavit seeking a continuance while they obtained additional material to oppose the pending motions. The appellants wanted to view a videotape prepared by an engineering firm for Benenson and its counsel concerning the leakage problems. Benenson objected to disclosure on grounds of work product. Appellants also assert that the trial court entered summary judgment for the appellees without ruling on their motion to compel discovery of the videotape.
Contrary to the appellants' representation, the record reflects that the trial court did rule on the motion to compel and denied it in its September 3, 1998, entry. Where, however, a party needs to complete discovery in order to adequately respond to a pending motion for summary judgment, Civ.R. 56(F) provides,
Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.
The decision to grant or to deny a Civ.R. 56(F) motion for additional discovery to oppose a summary-judgment motion is relegated to the sound discretion of the trial court. See Mauzy v.Kelly Services, Inc. (1996), 75 Ohio St.3d 578, 591,664 N.E.2d 1272, 1282; see, also, Brockman v. Bell (1992),78 Ohio App.3d 508, 605 N.E.2d 445. The term "abuse of discretion" connotes more than an error in judgment. See Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140,1142. To abuse its discretion, a court must have acted unreasonably, arbitrarily, or unconscionably. See Huffman v. Hair Surgeon, Inc.
(1985), 19 Ohio St.3d 83, 87, 482 N.E.2d 1248, 1252. In light of the more than two years of discovery in the current litigation, including more than a dozen depositions and thousands of pages of documents, the additional time given in June 1998 to depose Mr. Benenson, and the nearly three months appellants were given to respond to the motions for summary judgment, we find no abuse of discretion in the trial court's failure to order a continuance, when appellants were otherwise afforded ample time to conduct discovery. Therefore, the first assignment of error is overruled.
Summary Judgment for Benenson Appellees
In their second assignment of error, appellants claim the trial court erred in granting summary judgment for the Benenson appellees. After two years of extensive discovery in this cause, the Benenson appellees moved for summary judgment on March 31, 1998. Following the three-month period of additional discovery, on September 3, 1998, the trial court entered summary judgment for the Benenson appellees on all of the claims remaining against them.
The appellants contend that genuine issues of material fact still remain to be litigated on their claims of fraud, negligent misrepresentation, vicarious liability and statutory liability under the Ohio Condominium Act, R.C. Chapter 5311, all largely relating to a failure to disclose water leakage and security problems at Adams Place, and to issues concerning whether the Adams Place condominiums were improperly "split" and whether the Benenson appellees negligently repaired or negligently supervised the repair of the water leakage.
A court is not, however, precluded from granting summary judgment merely because of the multiplicity of claims or because of the length of the factual record. See Gross v. Western-Southern LifeIns. Co. (1993), 85 Ohio App.3d 662, 666-667, 621 N.E.2d 412,415. The function of summary judgment is to determine from the evidentiary materials if triable factual issues exist, regardless of whether the facts are complex.
A motion for summary judgment shall be granted if the trial court, upon viewing the inferences to be drawn from the underlying facts set forth in the pleadings, depositions, answers to interrogatories, written admissions, and affidavits in a light most favorable to the party opposing the motion, determines (1) that no genuine issue of material fact remains to be litigated, (2) that the moving party is entitled to judgment as a matter of law, and (3) that the evidence demonstrates that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion. Civ.R. 56(C). This court's review of the granting of a motion for summary judgment is de novo. SeeSmiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,506 N.E.2d 212; see, also, Koos v. Cent. Ohio Cellular, Inc. (1994),94 Ohio App.3d 579, 641 N.E.2d 265.
The substantive law governing the appellants' claims identifies the factual disputes that are material and thus could preclude summary judgment. See Anderson v. Liberty Lobby, Inc. (1986),477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510. The majority of the appellants' claims are based upon alleged negligence and misrepresentations of the physical state of the building by Benenson, in violation of duties imposed by the common law or by statute. Each of these claims includes, as an essential element, proof of damages flowing from a violation of those duties. For example, an action for fraud requires proof of a false material representation made with the intent of misleading another into relying upon it and of damages proximately caused by the reliance. See Burr v. Stark Cty. Bd. of Commrs. (1986), 23 Ohio St.3d 69,491 N.E.2d 1101, paragraph two of the syllabus; see, also, Williams v. Edwards (1998), 129 Ohio App.3d 116, 124,717 N.E.2d 368, 373-374. Even the appellants' statutory claim of failure to disclose material information in the condominium agreement, while not requiring proof of intent, see R.C. 5311.26, requires proof of damages in accordance with R.C. 5311.27. SeeBelvedere Condominium Unit Owners Assn. v. R. E. Roark Cos., Inc.
(1993), 67 Ohio St.3d 274, 286, 617 N.E.2d 1075, 1084.
Proof of damages in fraud-induced real estate purchases or exchanges is typically shown by a diminution or change in the value of the property. See Brewer v. Brothers (1992), 82 Ohio App.3d 148,154, 611 N.E.2d 492, 496. The cost of repair or replacement is an alternate representation of damages. See id.; see, also, Padgett v. Sanders (1998), 130 Ohio App.3d 117, 122,719 N.E.2d 636, 639-640.
The party moving for summary judgment "bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 274. In moving for summary judgment, the Benenson appellees asserted, inter alia, that the appellants incurred no demonstrable injury flowing from the acts of Benenson or its employees. They identified unrebutted evidence of record, including the statements of the appellants, that their units appreciated in value during the time that the acts in question occurred. Further, there is no evidence in the record to suggest that the appellants made any repair themselves or incurred any cost of repairs.
When, as here, the moving party discharges its initial burden, the nonmoving party has the reciprocal burden of producing evidence on the issues for which it bears the burden of production at trial. See id.; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115,526 N.E.2d 798, 801. Construing the evidence most strongly in favor of the appellants, we hold that appellants have not demonstrated the existence of any genuine issue of material fact on the issue of damages — an essential element of their claims. The trial court, therefore, correctly entered summary judgment on these claims. See Civ.R. 56(C); Dresher v. Burt.
The Benenson appellees also discharged their initial burden under Civ.R. 56 as to appellants' claims that condominium units were "split" in violation of R.C. 5311.03 and 5311.05. These statutes mandate amendment of the condominium declaration when units are divided or "split" to avoid the dilution of ownership and voting rights of the other owners without their consent. Here, the unrebutted evidence, including the deposition testimony of appellant Granger, is that the condominium declaration was amended by a vote of the owners before any "split" units were sold. As no genuine issue of material fact remains to be litigated on the split-unit claim, the trial court properly entered summary judgment on this claim. Civ.R. 56(C); Dresher v. Burt. Therefore, the second assignment of error is overruled.
Summary Judgment for MK Real Estate Appellees
In their third assignment of error, the appellants claim the trial court erred in granting summary judgment for the MK Real Estate appellees. Appellants allege that MK Real Estate made fraudulent misrepresentations, breached its fiduciary duty to unit 4500 sellers Anginoli and Bolling, and tortiously interfered with the business relationship between them and buyers Riley and Granger.
At trial on the claim of breach of fiduciary duty, the appellants would bear the burden of production to show that MK Real Estate breached its fiduciary duty of loyalty, good faith, and disclosure, and that the breach was the proximate cause of damages to the appellants. See, e.g., Clarke v. Hartley (1982), 7 Ohio App.3d 147,454 N.E.2d 1322. Appellants would, on their tortious-interference claim, have to show that MK Real Estate knew of the existence of a business relationship or contract among the appellants, and that, without privilege to do so, procured a contractual breach resulting in damages to the appellants. See,e.g., Brookside Ambulance, Inc. v. Walker Ambulance service
(1996), 112 Ohio App.3d 150, 155-156, 678 N.E.2d 248, 252.
In accordance with the burden on a moving party identified inDresher v. Burt, 75 Ohio St.3d at 293, 662 N.E.2d at 274, the MK Real Estate appellees asserted, inter alia, that they breached no fiduciary duty toward Anginoli and Bolling, and further asserted, as did the Benenson appellees, that appellants incurred no demonstrable injury from any alleged breach of a fiduciary duty or interference in the sale of unit 4500.
The appellants then identified the following evidence of record to sustain their reciprocal burden of producing evidence. See Civ.R. 56(C); Dresher v. Burt; see Mitseff v. Wheeler,38 Ohio St.3d at 115, 526 N.E.2d at 801. The record reflects that, in June 1995, appellants Anginoli and Bolling entered into an Exclusive Right to Sell Agreement with Re/Max and the MK Real Estate appellees. This agreement permitted MK Real Estate to place unit 4500 on the market and to show it for sale on behalf of Anginoli and Bolling. Appellants Riley and Granger had entered into a contract for the purchase of unit 4500 from Anginoli and Bolling on or about June 18, 1995. The MK Real Estate appellees knew of the existence of this contract. Instead of assisting in the performance of the contract, they encouraged Riley and Granger to look at other units in the building, including the more expensive unit 9500. They offered Riley and Granger a "trial run" stay in unit 9500.
We agree with appellants that the aggressive efforts of the MK Real Estate appellees to sell unit 9500 to Riley and Granger raise genuine issues of material fact as to whether they breached their fiduciary duty of loyalty to Anginoli and Bolling.
Nonetheless, to withstand summary judgment, appellants must present evidence from which, at the very least, it can be inferred that any breach of duty or interference was the proximate cause of the failure of the contract for the purchase of unit 4500. Here, the evidence, including the statement of appellant Riley, a licensed real estate agent, establishes that it was the failure of Granger and Riley to obtain a buyer for their Walsh Road property that prevented performance under the contract. In light of this unrebutted statement, there is no genuine issue of material fact remaining to be litigated as to whether the MK Real Estate appellees' possible breach of fiduciary duty proximately caused the failure of the contract — an essential element of the appellants' claims.
As in the discussion of the second assignment of error, the appellants have not shown the existence of a genuine issue of material fact as to whether any of the acts of MK Real Estate resulted in damages to the appellants — essential elements of each of the appellants' claims. See Civ.R. 56(C); Dresher v. Burt.
Neither is there a genuine issue of material fact from which it can be inferred that the appellees' conduct was so outrageous as to create a triable issue of fact on appellants' claim of intentional infliction of emotional distress. See Yeager v. LocalUnion 20, (1983), 6 Ohio St.3d 369, 374, 453 N.E.2d 666, 671. The third assignment of error is overruled.
Therefore, the judgment of the trial court is affirmed.
Judgment affirmed.
 Gorman, P.J., Painter and Sundermann, JJ.
[1] The Benenson appellees are The Benenson Capital Company, a limited partner in Adams Place Limited Partnership and the owner of Adams Place, and one of its employees, Shaun Henderson.
[2] The MK Real Estate appellees are MK Real Estate Ventures, Inc., and members of its sales team, Mary Ann Sasser, Linda Grassmuck, Connie MacKay, Sue Levy, Puck Schoettmer, and Sharon Lemon.